462 A.2d 708

**In re FRANK W.D., Jr.,**
**D.O.B. April 5, 1980.**

**Appeal of Donna M. SMITH, Natural Mother.**

Superior Court of Pennsylvania.

Argued March 22, 1983.

Filed June 17, 1983.

512

Jeffrey Lee Ledbetter, Huntingdon, for appellant.

David Alan Ody, Huntingdon, for participating party.

Before HESTER, JOHNSON and POPOVICH, JJ.

HESTER, Judge:

Appellant is the natural mother of the subject of these proceedings, Frank D., Jr., who was born on April 5, 1980. On September 25, 1980, Frank sustained a fractured humerus in his left arm. As a result of that injury, Frank was found to be an abused and dependent child within the meaning of the Child Protective Services Law, 11 P.S. § 2201 *et seq.*, and the Juvenile Act, 42 Pa.C.S.A. § 6301 *et seq.* Frank was placed in the custody of Huntingdon County Children's Services (hereinafter referred to as Children's Services). It is from this Order that appellant files this appeal.

The following facts led to the above determination in the case at bar. Appellant, who was eighteen years old at the time, was separated from her husband, John J. Smith.[1] At the time of Frank's injury, appellant was living with Terry Smith.[2] On the day in question, Terry was babysitting the infant between 3 p.m. and 6:30 p.m. When appellant returned, she noticed that the child was fussing, but was not moving his left arm. The next day, she took Frank to his pediatrician, Dr. William Chase, who had been treating the child since birth. When x-rays revealed the fracture, Dr. Chase referred the child to Dr. Nicholas E. Mihelic, an orthopedic surgeon, and also contacted Children's Services. Mary Clippinger, a caseworker, conducted an investigation into the matter.

A detention hearing was held on September 30, 1980, pursuant to the requirements of 11 P.S. § 2208(c) and 42 Pa.C.S.A. § 6332(a). The caseworker testified that she interviewed all of the people who had been responsible for the

1. The natural father of the child, Frank W. Dick, Sr., was incarcerated during the time period in question. On May 23, 1981, appellant and the father were married.

2. Mr. Smith was a friend of and no relation to appellant.

child during the time the injury occurred. The only explanation offered was that the child might have sustained the injury when he slipped off his mother's lap and through her legs as she disembarked from an automobile. Dr. Mihelic testified as to his opinion of this particular fracture:

"I do not have a good biomechanical explanation of the injury and from my knowledge of orthopedics and biomechanism and knowledge of children's orthopedics and the nature of the way children fracture, I have not yet heard a good explanation of a natural cause, i.e. fall or accidental cause of the injury. It is a suspicious fracture and in a suspicious area that would have to have a set of circumstances to explain it and I have not been able to ascertain a mechanism of injury that would explain this fracture by stories I have heard. I can't explain the mechanism of the injury. All I can infer is that it is direct trauma to the mid-shaft of the bone and the possibilities I think I have already outlined that I thought over in my mind that could have caused it. I have not been able to hear a story that matches what I know about the age of the child, the type of fracture itself, the location of the fracture and from my knowledge of forces applied to bones come up with an explanation of why an under year old child has a fracture in the diaphysis of a bone. It is transverse and broken completely through rather than splintered and, you know, without a story there had to be a great deal of force in my estimation to cause this. In order for a bone to break, and I can give you the figures, there is sometimes a force measurable to ten times body weight applied to a human area to break a bone and in a child it is a little bit different because bones give a little bit more. It may take even more force."

At the conclusion of the hearing, the judge found the infant to be an abused child as defined by 11 P.S. § 2203 [3], and remanded the custody of the child to Children's Services.

---

**3.** A child is defined as "abused" within the purview of the Child Protective Services Law when he or she "exhibits evidence of serious physical or mental injury not explained by the available medical history as being accidental ... if the injury, abuse or neglect has been

Immediately thereafter, Children's Services filed a Petition for Adjudication as a Dependent Child. On October 15, 1980, a lengthy dependency hearing was held, with all counsel agreeing that the testimony adduced at the September 30, 1980, hearing be incorporated into the record.[4] For the first time, the babysitter, Terry Smith, testified that, while carrying the infant, he lost his hold on the child. The infant fell from Terry's arms, only to be caught in the air prior to hitting the floor. Mr. Smith stated that upon grabbing the baby by the arm, "I heard something crack." The witness conceded that he only revealed his role in the incident the day before the hearing, and that, in fact, he had told several different stories to Children's Services in the course of its investigation.

Dr. Chase testified at this hearing also, and opined,

"this fracture could not have been caused by the way Mr. Smith described the incident and I am a hundred percent certain of that."

.    .    .    .    .

"The nature of the fall and the size and weight of the child and how the child was allegedly grabbed by Mr. Smith, it would not fit the mechanics of the fracture of that location; would not occur that way. There perhaps could be a dislocation or shoulder nerve injury to the shoulder area, but a fracture of that size is practically impossible."

Once again, the trial judge rendered a decision that Frank was an abused child and a dependent child pursuant to 42 Pa.C.S.A. § 6302[5], and awarded custody to Children's Ser-

caused by the acts or omissions of the child's parents or by a person responsible for the child's welfare...."

**4.** At the dependency hearing on October 15, 1980, the infant was represented by counsel, who acted as Guardian Ad Litem on his behalf.

**5.** A "dependent" child, according to the Juvenile Act, is one who "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals ...."

vices. The child has remained in foster care to date. Appellant seeks review of the both lower court's finding that Frank is an abused and dependent child and the decision to vest custody in Children's Services.

■ In reviewing an adjudication of dependency, we are guided by the manifest intent of the legislature in drafting the Juvenile Act, which was to preserve unity of the family whenever possible. 42 Pa.C.S.A. § 6301(b)(1). *In Re Interest of Ryan Michael C.*, 294 Pa.Super. 417, 440 A.2d 535 (1982). Consequently, a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available. *In Re LaRue*, 244 Pa.Super. 218, 366 A.2d 1271 (1976). A court may not find a child to be dependent absent clear and convincing evidence. 42 Pa.C.S.A. § 6341(c). This standard has been defined as testimony that is so direct and unambiguous as to enable the trier of fact to come to a sure determination, without conjecture, of the truth of the exact facts at issue. *Matter of Jackson*, 302 Pa.Super. 369, 374, 448 A.2d 1087, 1089 (1982); *In Re Jackson*, 267 Pa.Super. 428, 406 A.2d 1116 (1979).

■ This Court has urged the lower court to make a comprehensive and searching inquiry in these cases. *In Interest of LaRue, supra.* To that end, testimony should be adduced from all interested parties, and, if necessary, from objective, disinterested witnesses. *Id.* 244 Pa.Super. at 228–229, 366 A.2d at 1276. Finally, the ultimate decision of dependency should be accompanied by a full and complete analysis of the evidence, supported by appropriate findings of fact and conclusions of law. *Id.*

Upon reaching that result, a court still may not remove custody of the dependent child from his parents unless there exists the need to preserve and protect the welfare of the child or the interests of public safety. 42 Pa.C.S.A. § 6301(b)(3). *In Interest of Pernishek*, 268 Pa.Super. 447, 408 A.2d 872 (1979); *In Re Whittle*, 263 Pa.Super. 312, 397 A.2d 1225 (1979); *In Re Clause*, 244 Pa.Super. 396, 368 A.2d 780 (1976).

The standard of review which this Court employs in cases of dependency is broad. *In Re Custody of Neal,* 260 Pa.Super. 151, 393 A.2d 1057 (1978). However, the scope of our review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635 (1977). We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. *In Re Interest of Black,* 273 Pa.Super. 536, 417 A.2d 1178 (1980); *In Re Kunkle,* 265 Pa.Super. 605, 402 A.2d 1037 (1979). Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence. *Commonwealth ex rel. Morales v. Morales,* 222 Pa.Super. 373, 294 A.2d 782 (1972).

In the instant case, the lower court found the child to be dependent based upon the lack of adequate explanation of the child's abuse, appellant's admitted difficulty in caring for her children, the unacceptability of Terry Smith as a babysitter, and the child's other serious medical problems which were not adequately cared for by appellant. With the exception of the lower court's final observation, we agree that its decision is supported by clear and convincing evidence that Frank was a dependent child.

When Frank was born, he suffered from complications stemming from his premature birth, specifically, respiratory distress syndrome and an infection in the joints. The latter condition caused a deformity in the left leg and necessitated the wearing of a support harness. Although Dr. Mihelic expressed concern about appellant's compliance with his instructions on the pelvic harness, Dr. Chase testified that appellant cooperated with his office and appeared to follow the advice she received with respect to Frank's care. Consequently, we do not concur with the trial judge that appellant neglected to attend to her child's infirmities or that this should serve as any basis for his decision of dependency.

■ However, we do agree that sufficient clear and convincing evidence existed for the child to be classified as dependent. Although appellant argues that the child should not be removed in the face of one instance of poor judgment on her part for leaving the child with an unacceptable babysitter, we must disagree. The incident leading to the removal of the child was the infliction of a serious and dangerous injury which neither appellant nor any members of her household could satisfactorily explain. Moreover, since the hearing judge found Terry Smith's testimony to lack credibility, it remains unresolved as to who inflicted the injury on the child and when it occurred. Finally, expert witnesses testified that only direct force would cause such a break in the infant's arm.

We believe that Frank was without proper parental care necessary for his physical health and that such care was not immediately available. This Court has defined proper parental care as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *In Interest of Pernishek, supra,* 268 Pa.Super. at 458, 408 A.2d at 878. Obviously, appellant's parental care did not prevent her son from sustaining serious injury under suspicious circumstances. We would be remiss in the execution of one of our highest duties, the protection of the mental and physical welfare of children coming before this Court, if we did not find Frank to be a dependent child within the meaning of the Juvenile Act.

■ Once a finding of deprivation has been upheld, we must review the decision to separate the child from appellant to determine if it is "necessary" under the Act. *In Interest of Black, supra* 273 Pa.Super. at 547, 417 A.2d at 1181. Any decision to remove the child from his home must be reconciled with the paramount purpose of preserving the unity of the family. Such factors as the age of the child, the extent of his relationship with appellant, and the nature of that relationship should be considered. *Interest of LaRue, supra* 244 Pa.Super. at 230, 366 A.2d at 1271. Fur-

ther, the court should adduce the source of difficulties with appellant and whether her inability to maintain a secure home for her child is due to a lack of cooperation or a lack of understanding as to her duty to her son. *In Interest of Black, supra* 273 Pa.Super. at 548, 417 A.2d at 1184.

In the instant case, appellant's two older children were removed from her custody, although she had been working with Children's Services toward their eventual return. The trial court did not permit testimony concerning the circumstances surrounding the removal of those children, but appellant conceded that she had problems caring for her children. The placement of appellant's older children in foster homes is relevant to our inquiry herein in that it reflects upon her ability to maintain an appropriate environment for the health and welfare of her youngest child. *In Interest of Black, supra; In Re Kunkle, supra.* When an incident such as the one at bar occurs, we are constrained to conclude that the supervision and guidance of the caseworker failed to assist appellant in providing for adequate child care.

We therefore hold that the lower court was correct in ordering the immediate removal of Frank from his home and that such a separation was necessary to preserve his safety and health. However, our affirmance of this decision does not constitute a permanent order. "[I]n the interest of safeguarding the permanent welfare of the child, decrees concerning children are temporary and subject to modification to meet changing conditions." *In Interest of Black, supra,* 273 Pa.Superior at 549, 417 A.2d at 1185. *See also In Re Custody of Phillips,* 260 Pa.Super. 402, 394 A.2d 989 (1978); *Stapleton v. Dauphin County Child Care Service,* 228 Pa.Super. 371, 324 A.2d 562 (1974). Appellant may institute proceedings to recover her child and present evidence or professional evaluations regarding any improvement in her parenting skills and abilities. We encourage her to seek such help so that her child may eventually be

520

reunited with her and grow in an atmosphere of love and nurturance without fear of physical harm.

Order affirmed.