418 Pa. Superior Ct. 359 (1992)
614 A.2d 312
In re S.M.
Appeal of F.M. and L.M.
Superior Court of Pennsylvania.
Argued May 21, 1992.
Filed October 1, 1992.
*361 Kathy Jo Liddick, Towanda, for appellants.
L. Carter Anderson, Montrose, for participating party.
Before BECK, JOHNSON and HUDOCK, JJ.
BECK, Judge:
In this opinion, inter alia, we revisit the standard to be applied in evaluating effectiveness of counsel in a dependency proceeding.
This is an appeal from an order continuing the placement of fifteen-year-old S.M. in foster care after he was found to be a dependent child under section 6302 of the Juvenile Act. F.M. and L.M., appellants and parents of S.M., raise three issues on appeal: 1) whether the evidence was sufficient to support a finding of dependency; 2) whether the evidence was sufficient to support the trial court's finding that there was a clear necessity to place S.M. outside the home; and 3) whether appellants' trial counsel was ineffective. Our careful review of appellants' arguments and of the trial court record indicates that none of these contentions has merit. We affirm.
S.M. was placed in foster care after being involved in a confrontation with his father in which his father struck him in the rib cage. On several occasions S.M. reported to his school psychologist that his father hit him and that his home life was *362 unbearable. S.M. has a recent history of discipline and academic problems at school and displayed inappropriate behavior towards female classmates. S.M. was in therapy for a short time to help him with his problems but was withdrawn when he "fell in love" with his therapist.
Judge Kenneth Seamans found that S.M. was "without proper parental care or control ... necessary for his physical, mental, or emotional health, or morals...." and that he was, therefore, a "dependent child" as defined in section 6302 of the Juvenile Act. In the order on appeal, Judge Seamans continued S.M.'s placement in foster care and ordered that both he and his family receive counselling and that his parents attend parenting classes.
Appellants contend that the evidence presented was insufficient to support a finding of dependency. A finding of dependency must be supported by "clear and convincing evidence" that proper parental care and control are not available. In the Interest of Justin S., 375 Pa.Super. 88, 543 A.2d 1192 (1988); In Re Barclay, 321 Pa.Super. 417, 468 A.2d 778 (1983). Such a conclusion requires that testimony be "so clear, direct, weighty, and convincing as to enable the [trier of facts] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." In the Interest of Justin S. at 100, 543 A.2d at 1197. While our standard of review in dependency cases is generally quite broad, we must defer to the fact finding of the hearing judge who had the opportunity to observe and rule upon the credibility of the witnesses and parties who appeared. Id., 375 Pa.Superior Ct. at 100, 543 A.2d at 1198.
Judge Seamans heard extensive testimony from which he concluded that S.M. was "without proper parental care, control or education as required by law...." This conclusion was based largely on his finding that S.M.'s father employed excessive force in disciplining S.M. Our review of the record reveals that Judge Seaman's findings were supported by clear and convincing evidence. He did not err by adjudicating S.M. to be a dependent child.
*363 Ronald Miller, S.M.'s school psychologist, testified that S.M. had been experiencing serious disciplinary and academic problems during the recent school year. In particular, Mr. Miller described the inappropriate behavior which S.M. had displayed toward female students. Mr. Miller testified that S.M. had been in therapy for these problems and that he recommended to appellants that S.M. receive further therapy but that they did not follow his advice, even after S.M. was suspended from school for his inappropriate behavior. Mr. Miller also described conversations which he had had with S.M. in which he had the opportunity to gain insight into S.M.'s relationship with his father. During these conversations, S.M., often in tears, would describe how he had run away from home due to his unbearable home life and the fact that his father would hit him. Mr. Miller had on several occasions seen fit to put S.M. in contact with Children's Services, hoping that they might be able to help S.M. with the problems he was having at home.
Judge Seamans also heard testimony from Carol Newhart, a Children's Services caseworker, who discussed the findings of the investigation which she had done subsequent to a report that S.M. had been struck in the ribs by his father. Ms. Newhart testified that S.M. has problems dealing with his relationship with his father, that his father has a history of "inappropriate discipline" and "poor parenting skills," and that S.M.'s behavior was "age inappropriate." Ms. Newhart also testified that the relationship between S.M. and his father was deteriorating.
Finally, Dr. Albert Bertsch testified regarding the findings he made when S.M. was brought to be examined after reportedly being struck in the ribs by his father. Dr. Bertsch testified that S.M. had a "clinical fracture" of the rib, that the history which S.M. had given revealed that S.M. had been struck in the ribs by his father's knee, and that these two facts were consistent with one another.
After hearing all of this testimony, Judge Seamans concluded that S.M.'s parents were not providing S.M. with the necessary support and that S.M. had certain behavioral and *364 psychological problems to which his family life contributed. The record does not support appellants' contention that the evidence was insufficient for a finding of dependency. To the contrary, the hearing judge's adjudication of dependency was supported by clear and convincing evidence.
Appellants next argue that there was "no evidence presented of the clear necessity of removing the minor child from the home." In support of their contention, appellants argue that because no testimony was elicited from either of them regarding their ability to care for or control S.M., and because the trial court did not make a sufficient inquiry into alternative options, S.M.'s placement outside the home was based on insufficient evidence.
The relevant section of the Juvenile Act covering disposition of a dependent child provides, in pertinent part:
(a) General rule.  If the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the protection and physical, mental, and moral welfare of the child:
(1) Permit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child.
(2) Subject to conditions and limitations as the court prescribes transfer temporary legal custody to any of the following:
(i) Any individual resident within or without this Commonwealth who . . . is found by the court to be qualified to receive and care for the child.
(ii) An agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child.
(iii) A public agency authorized by law to receive and provide care for the child.
42 Pa.C.S.A. § 6351. The Juvenile Act has been interpreted to allow for the removal of a child from the custody of his parents only where there is clear necessity for such removal. *365 In Re Miller, 380 Pa.Super. 423, 552 A.2d 261 (1988). Such necessity is implicated where the welfare of the child demands that he be taken from his parents' custody. Id. We note that a decision to remove a child from his or her parents' custody must be reconciled with the "paramount purpose" of preserving family unity. In Re Frank W.D., 315 Pa.Super. 510, 462 A.2d 708 (1983). This reconciliation may require that temporary custody of the child be given to someone other than the parents until such time as the welfare of the child no longer demands that he be separated from his parents. See Frank, supra (decrees concerning children are temporary and subject to modification to meet changing conditions; appellant may institute proceedings to recover her child and present evidence or professional evaluations regarding any improvement in her parenting skills and abilities); see also Miller, supra (when child's home is inadequate, state agency should take steps necessary to instruct parents in skills needed). Ultimately, a hearing court is given broad discretion in meeting the goal of entering a disposition "best suited to the protection and physical, mental, and moral welfare of the child." In Re Lowry, 506 Pa. 121, 484 A.2d 383 (1984).
We find that appellants' contention in this regard is meritless. Judge Seaman's factual findings support the necessity of continuing S.M.'s placement in foster care. Moreover, his order clearly accords with the relevant statutory provisions, case law, and policy dictates in support of both family reunification and the child's best interests. The testimony revealed not only that S.M. was in need of help, but that at the present time S.M.'s parents were incapable of providing him with proper parental guidance, support, and discipline. With this in mind, the trial court required that S.M. receive individual counselling to help him with his problems, that his family receive family counselling, and that his parents attend parenting classes. The judge's decision was consistent with the Children's Services caseworker's recommendations and was supported by the facts of the case.
Finally, appellants contend that their court appointed *366 trial counsel was ineffective.[1] It is clear that in a dependency proceeding parents are entitled to counsel. The Juvenile Act explicitly states that "a party is entitled to representation by legal counsel at all stages of any proceeding under this chapter and if he is without financial resources or otherwise unable to employ counsel to have the court provide counsel for him." 42 Pa.C.S.A. § 6337. This court's recent decision in In the Matter of J.P., 393 Pa.Super. 1, 573 A.2d 1057 (1990) (en banc), established that parents whose children are the subjects of dependency proceedings have the right not only to counsel but to effective representation by counsel. However, the J.P. court was unable to establish a precedential standard for defining effective counsel.
The tension in establishing a standard in In the Matter of J.P. was between adopting a new rule of fundamental fairness, which was advocated by Judge Tamilia, and adoption of the standard for ineffectiveness applied in the criminal law, which was advocated by Judge Montemuro. While the rule of fundamental fairness does not provide a sufficiently clear test, adoption of the standard applied in criminal cases is also inappropriate in that such an approach focuses too heavily on the rights of the parents at the expense of the interests of the child. As Judge Johnson noted in In the Matter of J.P., "[t]he focus in a dependency/abuse case is not on the parent ... the focus is on the child and that child's best interests." Id. at 38, 573 A.2d at 1076 (Johnson, J., dissenting).
Under the criminal standard, in order to prevail on an ineffectiveness of counsel challenge, the appellant must show that she had a claim of arguable merit, that counsel handled the claim unprofessionally and that counsel's action caused her prejudice. Commonwealth v. Ferrari, 406 Pa.Super. *367 12, 593 A.2d 846 (1991). We hold that in the context of a dependency proceeding, before counsel can be deemed ineffective, under the above stated criminal standard, the appellant must make a strong showing of ineffectiveness of counsel. Under this heightened test the parent must come forward with evidence that indicates to a high degree of likelihood that but for an unprofessional error on the part of counsel, the child would not have been found to be dependent.
This heightened standard reflects the fact that a finding of dependency does not constitute a deprivation of liberty as does a sentence of imprisonment in a criminal setting. It also reflects the reality that it is of paramount importance in a child's life to have decisions about the child's status and placement be final, and not subject to challenge absent a strong showing of ineffectiveness on the part of counsel. As this court has noted, "[t]he state's interest in finality is unusually strong in child-custody disputes. . . . It is undisputed that children require secure, stable, long term, continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current `home' under the care of his parents or foster parents, especially when such uncertainty is prolonged." In the Matter of J.P., 393 Pa.Super. at 15, 573 A.2d at 1064 (citing Lehman v. Lycoming County Children's Services, 458 U.S. 502, 513-514, 102 S.Ct. 3231, 3238-3239, 73 L.Ed.2d 928 (1982)).
In light of these special considerations there is good reason for applying a more stringent test for measuring effectiveness of parents' counsel in dependency proceedings than for measuring the effectiveness of lawyers in most other settings. See Adoption of T.M.F., 392 Pa.Super. 598, 632-38, 573 A.2d 1035, 1053-56 (1990) (Beck, J., concurring). While identifying the unique needs of children, the heightened standard still provides protection for parents who have been inadequately served by their lawyer. It recognizes that parents must have effective counsel in order to vindicate their interest in raising their own children without the interference of the state. As Judge Montemuro stated in his Concurring Opinion in In the *368 Matter of J.P., "Whether the end result involves incarceration, confinement in a mental hospital or youth treatment center, or as here the removal of one's child, the forces of opposition (the state) are always larger and better equipped, but are not necessarily either correct or just in their assessments." 393 Pa.Super. at 28, 573 A.2d at 1071 (Montemuro, J., concurring).
Under this standard, it is clear that appellants' contention that their trial counsel was ineffective is meritless. Appellants have not demonstrated that there is a high degree of likelihood that but for an unprofessional error on the part of counsel, S.M. would not have been found dependent. Appellants point to the following acts and omissions which they contend support their claim of ineffectiveness of trial counsel: (1) that their attorney did not spend enough time preparing for the hearing; (2) that he did not "object to testimony that the minor child had engaged in inappropriate sexual activity"; (3) that he did not take testimony from S.M.'s primary care physician to refute the contention that S.M. had suffered a "clinical fracture" of his ribs resulting from his father's abuse; and (4) that he failed to call certain witnesses who would have undermined S.M.'s credibility.
The first and second of appellants' allegations of ineffectiveness appear to be interrelated. Appellants argue that counsel devoted insufficient time to preparing for the hearing and that one result of his lack of preparation was that he was unfamiliar with the allegations of the petition originally filed by Susquehanna County Children's Services. Thus, appellants argue that since counsel did not know that the petition failed to mention anything about S.M.'s allegedly inappropriate sexual behavior, he did not object to testimony on this subject at the hearing. Appellants suggest that if counsel had been better prepared, he would have objected to any mention of this subject since appellants had not been given notice that evidence of S.M.'s sexual problems would be offered in support of a finding of dependency.
Appellants' generalized contention that counsel failed to prepare for the adjudicatory hearing is clearly without merit. However, we might well find arguable merit in appellants' more specific allegation that counsel improperly failed to *369 object to the admission of evidence of S.M.'s sexual behavior on the ground that appellants were denied the opportunity to counter this evidence because they were not given any notice that Children's Services intended to rely on it in seeking a finding of dependency.[2] Nevertheless, even assuming there is merit in this contention, we cannot conclude that appellants have demonstrated a high degree of likelihood that without this evidence, S.M. would not have been adjudicated dependent. The trial court's order, while making ambiguous reference to S.M.'s sexual behavior, clearly indicates that the trial court's finding of dependency was largely grounded in the court's finding that S.M.'s father had engaged in inappropriate physical discipline of S.M. Thus, we cannot say with any degree of certainty that S.M. would not have been adjudicated dependent had the testimony concerning his sexual behavior not been presented.
Turning to appellant's remaining allegations of ineffectiveness, we find that neither of these allegations presents an arguably meritorious claim. Neither counsel's failure to take testimony from S.M.'s primary care physician nor his failure to call two other witnesses acquainted with S.M. can be seen as anything more than the exercise of counsel's professional judgment. Moreover, upon review of the entire record, we find highly unlikely that had counsel called these witnesses the result of the hearing would have been different.
Appellants contend that the primary care physician would have refuted the evidence that S.M. had a clinical fracture of the rib resulting from a blow from his father by testifying that several months prior to the incident in which S.M.'s father allegedly struck or kicked him in the ribs, S.M. had fractured a rib in the same area. Appellants further argue that this doctor would have stated that this old fracture might have appeared on the x-ray of S.M.'s ribs taken after the incident in question, and that this doctor might also have posited other *370 reasons for the pain S.M. stated he was experiencing in that area.
Our review of the testimony taken at the hearing reveals that the existence of S.M.'s prior fracture was elicited and that the subject of S.M.'s present injury and pain was fully explored through both direct and cross examination of the doctor who treated S.M. shortly after the incident in which he was struck by his father. Trial counsel's failure to call an additional witness concerning these subjects was not crucial to the trial court's determination of dependency.
Similarly, it cannot be said that it is highly likely that the trial court would not have found S.M. dependent had it heard testimony from the two other witnesses whom appellants allege trial counsel should have called. These two witnesses allegedly were acquainted with S.M. and saw him shortly after the incident with his father. They allegedly would have testified that S.M. did not exhibit pain shortly after the alleged incident with his father, thereby undermining S.M.'s credibility, and further would have testified that S.M. had a history of running away from home. This testimony, according to appellants, would have raised a question as to whether S.M.'s real motive in reporting the incident to Children's Services was simply to get out of his father's house.
Once again, our review of the testimony presented at the hearing reveals that the subject of S.M.'s pain after the alleged incident with his father and the subject of S.M.'s previous attempts to run away from home were fully explored. Specifically, S.M.'s brother was called by appellants' counsel to testify to the incident with S.M.'s father and as to whether S.M. appeared to be in pain immediately thereafter, and the school psychologist testified as to S.M.'s prior attempts to run away. Therefore, we cannot conclude that the trial court's determination would have been different if more evidence of this nature had been presented.
Clearly, under the heightened standard we herein adopt, appellants cannot prevail on their claims of ineffectiveness. For the foregoing reasons, we affirm the trial court's order.
JOHNSON, J. files a concurring and dissenting opinion.
*371 JOHNSON, Judge, concurring and dissenting.
I join completely so much of my distinguished colleague's Opinion as sets forth the standard of review in dependency cases, carefully reviews the record, and concludes that Judge Kenneth Seamans' adjudication of dependency was supported by clear and convincing evidence. I also join in that portion of my colleague's Opinion that finds no merit in the parents' contention that there was no evidence presented of the clear necessity of removing the minor child from the home.
F.M. and L.M., the parents of S.M., the child found to be dependent, also seek to argue on this appeal that the representation they received "was so inadequate and lacking that it undermined the truth-determining process [to the extent] that no reliable adjudication or disposition of a dependent child could have taken place." Brief for Appellants, pages 4, 7-13. In response, Judge Beck would attempt to establish a standard to be applied in evaluating claims of ineffectiveness of counsel in dependency proceedings. For several reasons, I must respectfully dissent from such an undertaking.
In the Matter of J.P., 393 Pa.Super. 1, 573 A.2d 1057 (1990), was decided March 27, 1990. At that time, I dissented from what appeared to be my colleagues' belief that ineffective assistance of counsel was a concept that could be transplanted into a civil dependency proceeding and their implicit assertion that the effectiveness of the representation of a parent is an appropriate ground upon which to review the action of our trial courts in dependency cases under the Juvenile Act and the Child Protective Services Law.
It remains unclear to this writer whether this Court has, indeed, put to rest the initial threshold question presented in Matter of J.P., namely, whether ineffectiveness of counsel is an available issue for appellate review in a dependency case. In that case, this question was summarily disposed of in the lead opinion with the following:
The first part of that question may be quickly and summarily answered yes; ineffectiveness may be alleged as a basis for appellate review. The Juvenile Act, 42 Pa.C.S.A. § 6337. Right to counsel, provides that a party is entitled *372 to representation by legal counsel at all stages of any proceeding under the Act, and if indigent, the right to have the court provide counsel for him.
Matter of J.P. at 8, 573 A.2d at 1061 (boldness in original). That lead opinion was joined by two judges. In a concurring and dissenting opinion joined by two other judges, Judge Montemuro accepted the short assertion on cognizability found in the lead opinion. Id., 393 Pa.Superior Ct. at 22, 573 A.2d at 1068, disagreeing only on the reasoning as to the suggested procedure for preserving and raising the claim. At least six of the nine judges on the court en banc viewed the right to be statutory in nature. Even Judge Beck, in her concurring opinion, seemingly adopted the conclusion that the right is statutory, declaring that any interpretation of the Juvenile Act that would permit the appointment of ineffective counsel would render the statutory right worthless and would subvert the intent of the legislature. Id., 393 Pa.Superior Ct. at 30-31, 573 A.2d at 1072.
The only case in our Supreme Court that has found a statutory right to the effective assistance of counsel is In Re Hutchinson, 500 Pa. 152, 454 A.2d 1008 (1982), affirming 279 Pa.Super. 401, 421 A.2d 261 (1980). There, the court was required to balance the competing interests of the Commonwealth and of the individual in the civil commitment context. The Hutchinson court recognized that involuntary civil commitment of mentally ill persons constitutes deprivation of liberty and may be accomplished only in accordance with due process protections. Id., 500 Pa. at 156, 454 A.2d at 1010, citing Appeal of Niccoli, 472 Pa. 389, 395 n. 4, 372 A.2d 749, 752 n. 4 (1977).
Matter of J.P. has been cited but once since March 1990, and then for the limited proposition that an issue of the propriety of an adjudication of dependency may be reviewed on the basis of ineffective counsel, even where the initial dependency finding was not followed by either a request for a ten-day hearing or reconsideration. In Re A.S., 406 Pa.Super. 466, 471, 594 A.2d 714, 716 (1991).
Our legislature has not yet elevated the statutory right to counsel found in the Juvenile Act, 42 Pa.C.S. § 6337, to one of *373 constitutional dimension. Moreover, I continue to seek, without finding, a clear and solid path through our cases to permit such an elevation. See Matter of J.P., 393 Pa.Super at 39, 573 A.2d at 1073-76, (Johnson, J., dissenting). I would therefore decline to participate in any attempt to fashion a procedure to implement the pronouncement made in Matter of J.P. concerning a parental right to use the ineffectiveness of counsel notion to secure additional review of our trial courts' performance in dependency proceedings.
Another independent reason exists, I believe, for refraining at this time from trying to establish a precedential standard for evaluation. The appeal in Matter of J.P. was specially scheduled before our en banc court to consider whether ineffectiveness of counsel is an available issue for appellate review in a dependency case and, if so, how and when may that issue be raised in the context of a dependency proceeding. Matter of J.P. at 8, 573 A.2d at 1061, Tamilia, J., lead opinion. While seven members of the court agreed, without extensive analysis, that a statutory right to effective assistance did exist, there was nothing approaching a consensus as to how and when the issue might be raised.
Writing in the lead opinion, which was joined by Judges Brosky and Popovich, Judge Tamilia advocated a review standard which coupled the eligibility standard for post conviction relief in a criminal proceeding, 42 Pa.C.S. § 9543(a)(2)(ii), with a fundamental fairness doctrine, in order to:
achieve, with the traditional broad scope of review in dependency cases, an effective and expeditious determination of ineffectiveness of counsel issues, without violating the underlying tenants of the juvenile proceeding.
Matter of J.P. at 18, 573 A.2d at 1066 (Tamilia, J.). The eligibility standard derived from the Post Conviction Relief Act would require that counsel seeking to establish ineffective assistance of counsel "must plead and prove that counsel's stewardship `so undermined the truth-determining process that no reliable adjudication' or disposition of a dependent child could have taken place." Id.
*374 Contrasting that approach, Judge Montemuro, writing on behalf of himself and Judges Rowley and Cavanaugh, concluded that the same ineffectiveness standard as has been traditionally employed in review of adult criminal matters should be applied in a child dependency proceeding. Matter of J.P. at 28, 573 A.2d at 1071 (Montemuro, J., dissenting).
My eminent colleague, Judge Beck, writing just for herself in Matter of J.P., declared that she "would . . . adopt the heightened standard that [she had] previously argued should apply to claims of ineffectiveness of parents' counsel in parental termination proceedings." Id., 393 Pa.Superior Ct. at 32, 573 A.2d at 1073 (Beck, J., dissenting).
None of the three suggested standards proposed in three separate opinions in Matter of J.P. was adopted by even a majority of that en banc panel. On this appeal, my colleague would urge the adoption of the standard which had been advanced by only one member of our court on the Matter of J.P. panel and opposed, at least implicitly, by at least six commissioned judges on the same panel. I am unaware of any case law which would expressly prohibit this three-judge panel from declaring a position not in conflict with a stated position of this court or our Supreme Court. Nevertheless, I am reluctant to believe that the responsibility which nine of us left undischarged at the time of filing Matter of J.P. is best fulfilled by three of us now adopting a minority viewpoint on behalf of the entire court.
I continue to believe, as I stated in Matter of J.P., 393 Pa.Super. at 33, 573 A.2d at 1076, that the concept of ineffective assistance of parents' counsel has no place in a civil dependency proceeding where the needs of the child are paramount. Our court has, thus far, been unable to express a view of a majority of our court on the standard(s) to be applied in effectuating a policy of ineffective assistance of counsel claims for parents of children subject to dependency adjudications. For the reasons set forth above, I must respectfully dissent from that portion of my distinguished colleague's Opinion as would establish a "heightened standard" *375 for application in dependency proceedings involving alleged ineffectiveness of parents' counsel.
NOTES
[1] This issue is appropriately raised on direct appeal from the trial court's final dispositional order. Since the Juvenile Act does not require or even permit the filing of post trial motions, appellants had no duty to preserve this issue through such motions in the trial court. Nevertheless, we do note that appellants properly raised the issue of counsel's ineffectiveness in their Concise Statement of Matters Complained of on Appeal, filed with the trial court pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).
[2] We recognize that dependency hearings by their very nature must be less formal than other civil or criminal proceedings. Consequently, the requirements of notice are relaxed. The instant case does not directly address the question of whether appellants were required to receive notice that S.M.'s sexual conduct would be raised.