PARIENTE, J.,
concurring.
I concur in the Court’s opinion but with trepidation because providing a mechanism to vindicate ineffective assistance of counsel claims in termination of parental rights (TPR) proceedings should not unintentionally cause negative consequences in the life of the child as a result of further delay. I therefore emphasize the important reality articulated by the Court — that “[t]imely disposition of TPR ineffective assistance of counsel claims is essential in light of the harm to the child that results when permanency is unduly delayed.” Majority op. at 793. As cogently recognized by the Supreme Court of Pennsylvania, “it is of paramount importance in a child’s life to have decisions about the child’s status and placement be final, and not subject to challenge absent a strong showing of ineffectiveness on the part of counsel.” In re S.M., 418 Pa.Super. 359, 614 A.2d 312, 316 (1992).
I write separately for three primary reasons: (1) to highlight the tension between protecting the right of a parent to file a claim of ineffective assistance of counsel with the critical goal of ensuring permanency and stability in the life of the child at the center of the legal dispute; (2) to suggest additional procedures and safeguards for trial courts to employ in balancing these competing interests; and (3) to explain why the standard adopted by the majority is well-suited to TPR proceedings and should not be conflated with the standard that is applied to ineffective assistance of counsel claims in criminal cases. I address each point in turn.
My chief concern, which has been echoed by the Office of the Statewide Guardian ad Litem (GAL), is that despite our best efforts, the obvious danger in establishing a procedure for parents to file a claim of ineffective assistance of counsel in TPR proceedings is that we may delay permanency for the child. Even if that delay is “only” a matter of 45 days at the trial level — 20 days to file the motion and 25 days for the trial court to issue a ruling — the ability of a parent to raise this issue and appeal a denial undoubtedly will complicate the process. So too will the requirement that different counsel be appointed — a necessary procedure but one that nevertheless carries the risk of further delaying the finality of the termination of parental rights because new counsel will be unfamiliar with what may at that point be a long and complicated record. And, with any delay, we increase the risk of thwarting adoption of the child into a loving family.[2]
*798 This case provides a telling example of delay. Despite the efforts to expedite the case at every level of judicial proceedings, including in this Court, the child who was born on November 29, 2009, with an order of termination of parental rights entered on August 13, 2013, and an appellate decision issued on October 7, 2014, is still in legal limbo.
In enacting procedures to protect the parents’ rights, everyone involved should be cognizant that the best interests of the child at the center of the case must remain foremost — and that the child currently has no recognized constitutional right, and only a limited statutory right, to counsel. In order to assist in ensuring that the child’s interests are taken into account, I would require the appointment of an attorney to specifically represent the child and advocate on his or her behalf in cases where ineffective assistance of counsel is asserted.
The role of the trial courts in striking the proper balance between the best interests of the child and the rights of the parents is paramount. Unlike a trial court in a criminal case, a trial court in a TPR proceeding is an active participant at every step of the way — from the initial shelter hearing to the shelter review, arraignment, dependency hearings, disposition hearings, periodic judicial status reviews conducted at a minimum of every six months, permanency hearings, advisory hearings, pretrial hearings, and finally all the way through the termination of parental rights adjudicatory hearings. See §§ 39.401(5) (shelter review hearing if placed with nonrelatives); 39.402 (shelter and shelter review hearing); 39.506 (arraignment); 39.507 (dependency adjudicatory hearing); 39.521 (disposition); 39.621 (permanency); 39.701(judicial review); 39.808 (advisory and pretrial); 39.809 (termination adjudicatory), Fla. Stat. (2014).
The amicus curiae brief filed by the GAL elaborates on the oversight role of the trial courts in dependency and TPR proceedings:
Chapter 39 [of the Florida Statutes] defines its purpose as the protection of children and the recognition that most families desire to be competent caregivers ' and providers for their children. § 39.001(l)(a) and (b), Fla. Stat. (2014). Based on this premise, the Legislature created a process that while considering a child’s right to permanency, provides judicial oversight by a judge who is not merely an unbiased fact-finder but instead actively oversees the proceedings, appointment of a guardian ad litem to advocate for the best interests of the children, the parent’s right to counsel, and numerous opportunities over the course of the case to be in front of the court and relay any concerns including those associated with their counsel. §§ 39.001(1X0; 39.013; 39.0134; 39.402(8)(c); 39.701(1); 39.822, Fla. Stat. (2014); Fla. R. Juv. P. 8.225(d); I.B. v. Dep’t of Children & Fams., 876 So.2d 581 (Fla. 5th DCA 2004) (“We also note that trial courts have inherent power when determining issues relating to children to consider the child’s best interests.”). This process ensures parental rights are not permanently severed without ample opportunities to be heard.
Amicus Curiae Brief of the Statewide Guardian ad Litem Office at 8, J.B. v. Dep’t of Children & Families, No. SC14-1990 (Fla. Nov. 20, 2014).
Given its involvement at every step of the process, the trial court can — and should — inquire throughout the course of the TPR proceedings if the parents are *799 satisfied with the performance of their attorney. In cases where the response is negative or equivocal, further inquiry can — and should — be undertaken to ensure that the parents’ attorney is performing reasonably. The trial court can — and should — also take all necessary steps to remedy any perceived problem it can discern regarding the lawyer’s representation.
This more actively involved role of the trial court is key to distinguishing why the same considerations underlying ineffective assistance of counsel claims in criminal cases are not at issue in TPR proceedings. As the Fourth District Court of Appeal has explained:
The role of the judge in termination proceedings is different from that in a criminal proceeding. The judge in a termination proceeding is the fact finder, the sentinel of the child’s best interest, and an involved participant in the process. The criminal trial judge, however, must maintain a neutral arbiter position. “Under the aegis of the court, the role of the lawyer, while important, does not carry the deleterious impact of ineffectiveness that may occur in criminal proceedings.”
E.T. v. State, 930 So.2d 721, 726 (Fla. 4th DCA 2006) (citations omitted) (quoting In re Adoption of T.M.F., 392 Pa.Super. 598, 573 A.2d 1035, 1042 (1990)).
I therefore agree with the Court that because TPR proceedings are unique, neither a Strickland[3] standard nor the more potentially amorphous “fundamental fairness” standard for evaluating ineffective assistance of counsel claims fits precisely. The problem with the Strickland standard is that we risk importing the law surrounding ineffective assistance of counsel claims in criminal cases — and in particular the expansive case law involving death penalty cases — which, as the Court’s opinion recognizes, involve totally different interests. See E.T., 930 So.2d at 726 (noting that challenges to the effectiveness of an attorney’s representation in criminal and TPR cases do not involve the same rights, the same liberty interest, the same standard of proof, the same timeframes, the same parties, or the same role of the judge).
A parent’s right to counsel in a TPR proceeding emanates from the Due Process Clause of the Florida Constitution, rather than the Sixth Amendment right to counsel from which a criminal defendant’s right to effective assistance is guaranteed. For this reason — and because of the different considerations at play, including espe-' dally the best interests of the child — I would ensure that the deficiency and prejudice prongs of the standard are clearly defined to require a parent to establish that the attorney’s performance or lack of performance so departed from accepted standards of representation, and the effect of the deficiency was so obviously detrimental to the outcome of the case, that the termination of parental rights would not otherwise have occurred. The Court’s opinion does exactly this.
Thus, unlike the Strickland standard of prejudice in criminal cases, which refers to “undermining confidence” in the result and is not either an outcome-determinative “but for” or even a “more likely than not” test, see Porter v. McCollum, 558 U.S. 30, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009), the standard for granting relief in a TPR proceeding on the basis of ineffective assistance of counsel involves exactly that kind of heightened showing — that the deficient representation so prejudiced the outcome of the TPR proceeding that but for counsel’s deficient representation, the parent’s *800 rights would not have been terminated.[4] In my view, this must be a “strong showing” of ineffectiveness, made by clear and convincing evidence. In re S.M., 614 A.2d at 316.
To promote clarity in the standard and a complete understanding of its implications, the Chief Justice’s Select Committee that will advise the Court on permanent rules should include judges who are part of the Dependency Court Improvement Panel, under the aegis of the Family Court Steering Committee, since those judges have the expertise and experience in these particular case types and are charged with improving the administration of justice as required not only by our statutes and case .law but also under mandates from the federal government. I would also suggest the inclusion of representatives from The Florida Bar’s Standing Committee on the Legal Needs of Children, the Guardian Ad Litem Program, Florida’s Children First, and the Florida Department of Children and Families, but I emphasize that the membership needs to consist of those judges and lawyers with particular expertise in this area.

. I understand the concern that the parents' rights not be terminated unless the requisite statutory showings have been made and, indeed, the standard is a high one of clear and convincing evidence. But the extreme example given in a secondary source cited by the Petitioner, where the termination is erroneously filed against a parent whom the State mistakes for another individual serving a sentence of life imprisonment, is divorced from reality and highly improbable given the extensive proceedings that precede any termination of parental rights. See Anthony C. Musto, Potato, Potahto: Whether Ineffective Assistance or Due Process, An Effective Rule is Overdue in Termination of Parental Rights *798 Cases in Florida, 21 St. Thomas L.Rev. 231 (Winter 2009).

. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

. In addition to arguing for a meaningful standard to challenge ineffective assistance of counsel, the amicus curiae brief filed by Florida’s Children First and the University of Miami School of Law Children and Family Youth Law Clinics provides a litany of claimed "examples of potentially ineffective assistance of counsel in Dependency and TPR cases,” including attorneys being unavailable to their clients; attorneys negotiating pleas without full discovery; attorneys unfamiliar with the basic subject matter knowledge to effectively cross-examine experts; attorneys arguing outdated case law and statutes; and attorneys without basic knowledge of evidence. Ami-cus Curiae Brief of Florida’s Children First & Univ. of Miami Sch. of Law Children & Youth Law Clinics at 10-11, J.B. v. Dep't of Children & Families, No. SC14-1990 (Fla. Nov. 20, 2014). The amicus curiae brief asserts that the "level of practice in Dependency and Termination proceedings is abysmal, and parents and children suffer because of it.” Id. at 11. If a statewide problem exists in the quality of the representation of parents as asserted by Florida’s Children First, I would urge The Florida Bar and its Standing Committee on the Legal Needs of Children to take steps to analyze the extent of the problem and to propose solutions, as well as to consider recommended guidelines to be adopted regarding standards of representation in dependency and TPR proceedings.