J-S27016-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF:<br>N.R., A MINOR | : | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.S., MOTHER | : | No. 200 EDA 2020 |

Appeal from the Order Entered January 3, 2020
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0001362-2013

| | | |
|---|---|---|
| IN THE INTEREST OF:<br>A.S., A MINOR | : | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.S., MOTHER | : | No. 201 EDA 2020 |

Appeal from the Order Entered January 3, 2020
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0000329-2016

| | | |
|---|---|---|
| IN THE INTEREST OF:<br>I.R., A MINOR | : | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.S., MOTHER | : | No. 202 EDA 2020 |

Appeal from the Order Entered January 3, 2020
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0001648-2013

J-S27016-20

IN THE INTEREST OF:            :    IN THE SUPERIOR COURT OF
J.R., A MINOR                  :            PENNSYLVANIA
                               :
                               :
                               :
                               :
                               :
APPEAL OF: C.S., MOTHER        :    No. 203 EDA 2020

Appeal from the Order Entered January 3, 2020
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0001869-2014

BEFORE:   SHOGAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED JULY 7, 2020**

In these consolidated appeals, Appellant, C.S. (Mother), appeals from

the permanency review orders entered in the Philadelphia County Court of

Common Pleas, adopting the recommendations of the hearing officer that,

*inter alia*: four of her children,[1] N.R. (born June 2013), A.S. (born November

2015), I.R. (born April 2010), and J.R. (born August 2014) (collectively, the

Children), be committed to the Philadelphia Department of Human Services

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Mother has three additional children, who are not the subject of these
matters, who reside with their father.

Additionally, we note the parental rights of the fathers of N.R., I.R., and
J.R. were previously terminated.  **See** Decrees of Involuntary Termination of
Parental Rights, 5/25/17; Decree of Termination of Parental Rights – Confirm
Consent, 1/10/17; **see also** N.T., 1/3/20, at 10-12.  The whereabouts of
A.S.'s father — A.H. — are unknown.  Trial Ct. Op., 2/12/20, at 20.

- 2 -

(DHS); legal custody be transferred to DHS; and the Children be placed in kinship care, pending referral. After careful review, we affirm the trial court's orders.

The trial court summarized the relevant procedural and factual history as follows:

> Dependency Petitions for the Children were filed by DHS on 10/01/2019,[2] after a [general protective services (GPS)] Report dated August 1, 2019, alleged that A.S. stated that he had eaten feces; that his older sibling hit him and told him not to disclose the family's business; A.S. explained he had been forced to ingest feces because he had been having accidents [sic]. The Report further alleged A.S. had presented the previous Monday with a gash on his face between his eyes and his elbow was wrapped and swollen; Mother stated that she had attempted to stop A.S. from falling by grabbing his arm and that his elbow was pulled in the process. Mother stated that she did not take A.S. to a doctor; that he appeared to be in pain whenever he played or when something touched his elbow; when asked to provide a doctor's note, Mother stated that A.S. was fine. The Report alleged that Mother was visibly intoxicated on 7/31/2019, when she picked up A.S. from school and the incident was reported to the Director of the school. The Report was determined to be valid.
>
> On October 15, 2019, the 4 Children were [a]djudicated [d]ependent, and remained in Mother's legal custody with DHS [s]upervision. Safety plan to be implemented and Mother was ordered to [the Clinical Evaluation Unit (CEU)] for forthwith drug screen plus 1 random prior to next hearing date. Mother was also ordered to have a parenting refresher course. (Orders of Adjudication and Disposition, 10/15/2019).

---

[2] DHS had been involved with the family since 2012. Custody was previously returned to Mother on May 2, 2019, and court supervision of the three older children — N.R., I.R., and J.R. — was recently terminated on July 24, 2019, with the Community Umbrella Agency (CUA) to offer aftercare services, if needed. *See* Orders for Termination of Court Supervision, 7/24/19. Custody Decrees 5/2/19.

Trial Ct. Op., 2/12/20, at 15-16.

Thereafter, an initial permanency review hearing was held on January 3, 2020, before Hearing Officer Vincent Giusini, Esquire. Mother, although not present, was represented by court-appointed counsel, William Rice, Esquire. The Children were represented by a guardian *ad litem*, Scott Gessner, Esquire.[3]

Significantly, Mother had a history of substance abuse and mental health issues and did not attend therapy[4] or the random drug and alcohol screen ordered at the October 2019 adjudicatory hearing.[5] N.T., 1/3/20, at 3-5. **See**

_____

[3] By order entered October 2, 2019, Attorney Gessner was appointed as guardian *ad litem* and/or counsel. Order Appointing Counsel, 10/2/19. We observe that Attorney Gessner was referred to as a child advocate in the notes of testimony. N.T., 1/3/20, at 2. Attorney Gessner did not submit a brief on behalf of the Children to this Court.

[4] Attorney Rice acknowledged that Mother did not attend therapy. N.T., 1/3/20, at 4.

[5] Attorney Rice argued that Mother's attendance at the random screen is disputed. N.T., 1/3/20, at 5. While he referenced Mother's testimony to this effect, it is unclear to which proceeding he was referring. **See id.** We further observe the notes of testimony begin somewhat abruptly with DHS's request for temporary legal custody. **Id.** at 3. There is also reference to testimony by the children's paternal grandmother, M.V. (Paternal Grandmother) that she could use the "help" that a kinship referral would provide. **Id.** at 4. Additionally, CUA worker Beverly Jackson specifically provided testimony as to the safety of I.R., J.R., and A.S. Although there is the suggestion that the same was provided for N.R., this is also not included. **Id.** at 10-13. Upon informal inquiry by this Court, the trial court advised that there are no additional transcripts or volumes of testimony.

*also* Exhibit DHS-2, 10/15/19; CEU Reports, 1/4/18, 9/22/14, 6/17/14, 3/21/14, 12/27/13; Exhibits M-1 to M-3, 2/11/15. Further, there was a suggestion of Mother's behavioral change and/or worsening behavior as confirmed by CUA worker, Beverly Jackson. *Id.* at 4, 8. Moreover, Mother was having problems paying her bills and was potentially facing eviction. *Id.* at 3, 5, 8. The Children, however, resided mainly with Paternal Grandmother through a family arrangement.[6] *Id.* at 5-6, 10. DHS requested temporary legal custody for Paternal Grandmother, with DHS supervision; notably, Mother, through counsel, agreed.[7] *Id.* at 3-5. The Children's guardian *ad litem*, Attorney Gessner, however, requested fully committing the Children to

_____

[6] Ms. Jackson testified the Children do spend some nights with Mother:

> [O]ver the break, two of the children spent two — three nights with Mom. So, during the weekend, sometimes if Mom is not working a day or two, the kids will stay there, two of the children — maybe four of them, but most of the times, it's just the two and she'll take them to school.
>
> * * *
>
> — or pick them up early and then they stay the night and she takes them back the next day.

N.T., 1/3/20, at 6.

[7] Despite DHS' request for temporary legal custody at the permanency review hearing, in its brief filed in this Court, DHS supports the trial court's orders adopting the Hearing Officer's recommendation for fully committing the Children to DHS custody with a kinship referral. *See* DHS's Brief at 6-10.

DHS custody, and placing the Children in kinship care with Paternal Grandmother. *Id.* at 4-5.

Hearing Officer Giusini made the following recommendations: that the Children be fully committed to DHS, legal custody be transferred to DHS, and the Children be placed in kinship care, pending referral. Mother was further referred to CEU to submit to three random drug and alcohol screenings and Behavioral Health Services (BHS) for consultation/evaluation. Visitation with Mother was to be liberal and unsupervised. However, visitation was to be supervised by Paternal Grandmother if Mother tested positive or failed to appear for a drug and alcohol screen. Recommendation – Permanency Review, 1/3/20, at 1-2; N.T., 1/3/20, at 6-9. The trial court adopted these recommendations by orders the same day.[8] Recommendation – Permanency Review, 1/3/20, at 2.

On January 9, 2020, Mother, who was still represented by Attorney Rice, filed timely, *pro se* notices of appeal and Pa.R.A.P. 1925(a)(2)(i) concise

_____

[8] We note Mother did not file a motion, pursuant to Pennsylvania Rule of Juvenile Court Procedure 1191, challenging the hearing officer's recommendations. *See* Pa.R.J.C.P. 1191(C) ("A party may challenge the juvenile court hearing officer's recommendation by filing a motion with the clerk of courts within three days of receipt of the recommendation."). However, this Court has held "Rule 1191 does not require a party to challenge a master's recommendation" and that the lack of such a motion does not waive the issue for our review. *In Interest of J.P.*, 178 A.3d 861, 865 (Pa. Super. 2018).

statements of errors complained of on appeal.[9]  On January 15th, the trial

court ordered Attorney Rice to file amended Rule 1925(b) statements within

ten days.  *See Commonwealth v. Jette*, 23 A.3d 1032, 1036 (Pa. 2011)

(Court's long-standing policy precludes hybrid representation).  Attorney Rice

complied, filing the statements with this Court on January 23rd.  This Court

*sua sponte* consolidated Mother's appeals on February 7th.

On appeal, Mother raises the following issue for our review:

The trial court erred and/or abused its discretion by entering
orders on January 3, 2020, accepting the recommendations of
Juvenile Court Hearing Officer Vincent Giusini committing Mother's
children to [DHS].  More specifically, [DHS] has failed to meet its
burden to demonstrate that removal from Mother's care was a
clear to [sic] necessity.

Mother's Brief at 7.  Mother argues the trial court erred in accepting the

recommendation of the hearing officer "despite the fact that the basis of the

recommendation was based largely upon speculation."  *Id.* at 13.  She

contends, "The evidence or lack thereof did not rise to the level of a clear

necessity which is required to remove a child from the care of a parent."  *Id.*

No relief is due.

We observe our standard of review for dependency cases:

---

[9] *See In re H.S.W.C.-B & S.E.C.-B.*, 836 A.2d 908, 911 (Pa. 2003) (with regard to dependency matters, "[a]n order granting or denying a status change, as well as an order terminating or preserving parental rights, shall be deemed final when entered"); *Stewart v. Foxworth*, 65 A.3d 468, 471 (Pa. Super. 2013) ("An appeal lies only from a final order, unless permitted by rule or statute.").

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citations omitted). As we have

stated:

In addition[, a]lthough bound by the facts as found by the trial court and supported by the record, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for an abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and the witnesses.

*In re K.J.*, 27 A.3d 236, 241 (Pa. Super. 2011) (citation omitted).

Section 6351 of the Pennsylvania Juvenile Act, "Disposition of

dependent child," provides in relevant part:

**(a) General rule.—**If the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the safety, protection and physical, mental, and moral welfare of the child:

(1) Permit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child.

(2) Subject to conditions and limitations as the court prescribes transfer temporary legal custody to any of the following:

(i) Any individual resident within or without this Commonwealth, including any relative, who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child.

(ii) An agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child.

\* \* \*

**(b) Required placement findings.—**Prior to entering any order of disposition under subsection (a) that would remove a dependent child from his home, the court shall enter findings on the record or in the order of court as follows:

(1) that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and

(2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition[.]

42 Pa.C.S. § 6351(a)(1)-(2), (b)(1)-(2).

Further, as to the removal of a child, this Court has explained:

. . . The Juvenile Act has been interpreted to allow for the removal of a child from the custody of his parents only where there is clear necessity for such removal. Such necessity is implicated where the welfare of the child demands that he be taken from his parents' custody. We note that a decision to remove a child from his or her parents' custody must be reconciled with the "paramount purpose" of preserving family unity. This reconciliation may require that temporary custody of the child be given to someone other than the parents until such time as the welfare of the child no longer demands that he be separated from his parents. Ultimately, a hearing court is given broad discretion in meeting the goal of entering a disposition "best suited to the protection and physical, mental, and moral welfare of the child."

- 9 -

***In Re S.M.***, 614 A.2d 312, 314-15 (Pa. Super. 1992) (citations omitted).

In support of its adoption of the hearing officer's recommendations, the trial court reasoned:

> If the court finds that [a] child is Dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).
>
> Mother alleges that the Trial Court erred in removing the Children from Mother's care and committing to DHS. This Court disagrees. Once the adjudication of dependency was made as to these Children on October 15, 2019, this Court continued the family agreement between Mother and Paternal Grandmother and ordered DHS Supervision. Mother was ordered forthwith to CEU for a drug screen plus 1 random drug screen prior to the next Court date, and also a parenting refresher course.
>
> However, at the next hearing, on January 3, 2020, a Court Hearing Officer heard credible, persuasive testimony that Mother failed to attend the drug screen ordered on 10/15/2019. Mother has a history of using PCP and methamphetamines and she has a history of displaying violence and hostility. Therefore, the Court Hearing Officer expressed his concerns about Mother and concluded it was clear and necessary for the welfare of the Children to be in placement with Paternal Grandmother.
>
> Clear necessity of removal is implicated where the welfare of a child demands that he or she be taken from their parents' care. ***In re S.M.***, 614 A.2d 312 [(Pa. Super. 1992)]. Once adjudication of dependency has been made and the court finds clear necessity for removal of the child from custody of parent, the court will award custody based on [the] best interest of the child. ***Walker v. Johnson***, [891 F.Supp. 1040 (M.D. Pa. 1995)].
>
> This Court found persuasive, sufficient evidence was presented at the Permanency Review Hearing to support the finding that conditions were present that necessitated placement of the Children in Foster Care, specifically, Kinship Care with

Paternal Grandmother, and that it would be contrary to their welfare and best interests to have them remain with Mother at this time.

Beverly Jackson, CUA Worker, testified that the two of the four children were spending three nights with Mother, usually over the weekends, but if they are school days, then Mother will take them to school. She stated the CUA is uncomfortable with unsupervised visits for Mother if temporary legal custody is given to Paternal Grandmother, however, Ms. Jackson stated there are no safety issues with Mother.[10] Further, Ms. Jackson agreed with the proposal of Mother obtaining three drug screens because of her behavior and possible eviction from where she is living because of nonpayment of bills.

Ms. Jackson testified that N.R., 6 ½ years old; I.R., 9 ½ years old; and J.R., 5 ½ years old, all attended Cramp Elementary School. They do not have educational issues and are up-to-date on medical and dental. She further testified that A.S., 4 years old, has no educational issues, no developmental concerns, and is up-to-date on medical and dental. She stated the Children were safe in the current placement setting as of 1/2/2020. A PLS was received for A.S.'s Father, A.H. . . . Ms. Jackson testified she was unsuccessful in outreach to him at that address[;] therefore, A.S.'s Father's whereabouts remains unknown.

## CONCLUSION:

_____

[10] When examined on the issue of safety, Ms. Jackson testified as follows:

[Guardian *ad litem*]: Is CUA comfortable with supervised visits? Do you think there's any safety issues there?

MS. JACKSON: Not — not really.

[Guardian *ad litem*]: But they're not really comfortable.

MS. JACKSON: But I can't — I can't — I can't say. I — yeah, I really can't say.

N.T., 1/3/20, at 7-8.

> This Court reviewed the Findings and Recommendations of the Juvenile Court Hearing Officer, who heard credible, persuasive testimony from the CUA worker based on her first-hand knowledge of the Children. The Hearing Officer also expressed concerns regarding Mother's history of substance abuse, her failure to comply with the previous Court order for her to provide a drug screen on 10/15/2019, plus 1 random drug screen prior to the 1/03/2020 Hearing. He was also concerned about Mother's history of displaying violence and hostility. This Court found the Recommendations were in the best interest of the Children and therefore, adopted it. . . .

Trial Ct. Op. at 18-20 (citations to record omitted).

Upon review, we discern no abuse of discretion. To the extent Mother disputes the credibility of the witnesses and weight of the evidence, no relief is due. *See In re R.J.T.*, 9 A.3d at 1190; *In re K.J.*, 27 A.3d at 241. The evidence supports the trial court's adoption of the hearing officer's recommendations, as well as the court's conclusion that full committal to DHS, with transfer of legal custody and kinship referral, was in Children's best interests and best suited to their protection and physical, mental and moral welfare. We thus affirm the trial court's orders.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/07/2020

- 12 -