**In re N.B.**

**Appeal of P.B., Appellant.**

Superior Court of Pennsylvania.

Argued July 23, 2002.

Filed Feb. 7, 2003.

Peter D. Schneider, Philadelphia, for appellant.

Before STEVENS, KLEIN, and TAMILIA, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the April 4, 2001 order entered by the Court of Common Pleas of Philadelphia County, which denied Appellant's ("Mother") motion to change counsel at an adjudicatory hearing held pursuant to a dependency petition filed under the Juvenile Act. For the following reasons, we quash.

¶ 2 The undisputed facts of the case have been aptly summarized by the lower court as follows:

Mother, father and child became known to the [Philadelphia] Department of Human Services (hereinafter DHS) on or about March 13, 2001, when St. Christopher's Hospital kept the child after a routine medical appointment. The child had lost 10% of its body weight and had been diagnosed with a life threatening disease. The child's brain had also shrunk, resulting in the child being developmentally delayed. Upon the parents' refusal to sign a Voluntary Placement Agreement, DHS submitted a Request for a Restraining Order on March 22, 2001, and a hearing was scheduled on March 23, 2001, at 9:00 a.m.

[At the March 23rd hearing, the lower court] ordered a temporary commitment of the child to DHS [pursuant to the Juvenile Act, 42 Pa.C.S. § 6332]. At that time the child remained hospitalized at St. Christopher's. Liberal visitation was arranged between the parents and the child. [The lower court] ordered DHS to place the child in an appropriate medical foster home; to refer the family for intensive services through Family

Preservation and to refer mother and father for education regarding the child's illness and medical needs. [The lower court] was informed on March 23, 2001 that mother and father lived at the same residence and the goal established for the family was to reunify the child with both parents. At that time, [pursuant to 42 Pa.C.S.A. § 6337, the lower court] appointed counsel to represent mother and father.

\*    \*    \*    \*    \*    \*

At an adjudicatory hearing on April 4, 2001, counsel from Community Legal Services (hereinafter CLS) informed the court that mother had contacted their office prior to March 23, 2001, seeking representation in the matter of N.B. [The lower court] appointed counsel to represent mother on March 23, 2001 [at the previous hearing, and at] that time, mother never mentioned having counsel nor sought representation from CLS. At the time of the April 4, 2001 hearing, [the lower court] concluded once again, that the interests of N.B.'s parents were identical. As a result, counsel from CLS was prohibited from entering her appearance on behalf of [Mother.] [The lower court] concluded that it did not need two attorneys to represent the parents who continued to reside in the same home and who were trying to get the same child returned to live with them. Counsel for CLS readily admitted that the interests of the parents were identical, however, she argued before [the lower court] that "you never know what's going to happen down the road." (N.T. 4/4/2001 p. 6).

[The lower court informed] all parties that in the event the parents' interests diverged, [it] would appoint each parent new and separate counsel, as is required by law. (N.T. 4/4/01 pp. 6–7).... As a

further matter, [the lower court] offered CLS the opportunity to represent both parents; an offer which CLS declined based on its own internal agency policy. (N.T. 4/4/01 pp. 7–9). [Thereafter, appointed counsel continued to represent both Mother and Father].

Lower Court's Pa.R.A.P.1925(a) Opinion, 11/30/01 at 3, 5–6.

¶ 3 On April 16, 2001, Mother filed a motion for reconsideration of the lower court's order prohibiting CLS counsel from entering her appearance, but the lower court denied the motion by order of May 2, 2001. On May 4, 2001, Mother filed the present appeal challenging the order denying her right to representation by counsel of her own choosing.

¶ 4 Mother raises the following issue for our review:

**DID THE TRIAL COURT ABUSE ITS DISCRETION AND DENY THE MOTHER DUE PROCESS OF LAW WHEN, IN DEPENDENCY PROCEEDINGS CONCERNING HER DAUGHTER, IT DENIED HER THE RIGHT TO BE REPRESENTED BY RETAINED COUNSEL OF HER CHOOSING AND INSTEAD REQUIRED HER TO BE REPRESENTED BY COURT–APPOINTED COUNSEL, WHO HAD ALSO BEEN APPOINTED TO REPRESENT THE CHILD'S FATHER[?]**

Brief of Appellant at 4.

¶ 5 Initially, we *sua sponte* raise the issue of whether an order that denies a parent the power to discharge court-appointed counsel in favor of privately retained counsel is immediately appealable to this Court. *See Duttry v. Talkish*, 394 Pa.Super. 382, 576 A.2d 53, 58 (1990) (it is the right and obligation of an appellate court to raise the issue of jurisdiction even where parties do not). The question of the appealability of an order goes directly to the jurisdiction of the Court asked to review the order. *Pace v. Thomas Jefferson Univ. Hosp.*, 717 A.2d 539, 540 (Pa.Super.1998). We address the appealability of the April 4, 2001 order denying Mother's request to change counsel because the order is not, on its face, a final order, in that it did not contain a contemporaneous determination of dependency or a disposition of the child. *See In re C.A.M.*, 264 Pa.Super. 300, 399 A.2d 786 (1979) (dependency orders are appealable when there has been a determination of dependency and a disposition of the child has been ordered).

¶ 6 Under Pennsylvania law, an appeal may be taken from: (1) a final order or an order certified by the trial court as a final order (Pa.R.A.P.341); (2) an interlocutory order as of right (Pa.R.A.P.311); (3) an interlocutory order by permission (Pa.R.A.P. 312, 1311, 42 Pa.C.S.A. § 702(b)); (4) or a collateral order (Pa.R.A.P.313). *Beltran v. Piersody*, 748 A.2d 715 (Pa.Super.2000). A final order is any order that disposes of all claims and all parties, is expressly defined as a final order by statute, or is entered as a final order pursuant to the trial court's determination. Pa.R.A.P. 341(b)(1)-(3).

¶ 7 Here, there are no grounds for this Court to consider the order on appeal as final under Pa.R.A.P. 341. The order appealed from does not dispose of all claims or all parties involved, is not expressly defined as a final order by statute, and was not entered as a final order. Moreover, neither Rule 311 nor 312 relates to the present matter.

¶ 8 Nor may we find the order appealable under Rule 313, which provides an exception to the rule of finality for certain interlocutory orders that qualify for an exception applied to collateral or-

ders.[1] Specifically, under this exception, an order is immediately appealable if (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. *Pugar v. Greco*, 483 Pa. 68, 73, 394 A.2d 542, 545 (1978) (citing *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (setting forth the three prong test for whether an order is considered final and appealable)).[2]

¶ 9 This Court has applied the *Cohen* criteria to cases, both civil and criminal, involving orders denying counsel. In *Duttry, supra*, this Court held that an order denying an indigent's request for appointment of counsel in an ongoing custody/visitation case was interlocutory and failed to satisfy exceptions carved out in *Cohen, et al.* In *Commonwealth v. Johnson*, 550 Pa. 298, 705 A.2d 830 (1998), the Pennsylvania Supreme Court held that an order disqualifying a criminal defendant's choice of defense counsel is interlocutory and is not immediately appealable. Consistent with the *Cohen* exception, the Supreme Court in *Johnson* recognized the entitlement of criminal defendants to an immediate appeal depends on whether such an appeal is "necessary to ensure that they would not be deprived of a constitutional right." *Johnson*, 550 Pa. at 303, 705 A.2d at 833.

¶ 10 To illustrate when an immediate appeal would be "necessary," the Court contrasted the case of an order denying a motion to dismiss based upon double jeopardy absent a trial court finding that the motion is frivolous with the case of an order denying a motion to suppress evidence. Both motions seek to vindicate constitutional rights allegedly violated, but only in the double jeopardy case would the constitutional right (to be free of a second prosecution) be lost by postponing appeal to post-judgment. The suppression motion, on the other hand, may be effectively reviewed post-judgment, and if the ruling was incorrect, the defendant may be granted a new trial wherein the illegally-obtained evidence is suppressed. The Court then concluded:

> Like the denial of a suppression motion, an order disqualifying counsel is reviewable after judgment of sentence. If a judgment is obtained and it is determined on appeal that the trial court improperly removed counsel, *the right to counsel of choice* is not lost. There will be a new trial and the defendant will have his counsel of choice. This is unlike a double jeopardy claim where if the trial goes forward and the court wrongly denied the motion, the right is lost.

---

1. Rule 313 provides:
   (a) General Rule. An appeal may be taken as of right from a collateral order of an administrative agency or lower court.
   (b) Definition. A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

2. In *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), the United States Supreme Court clarified the *Cohen* requirements for an appealable order, holding that, to be appealable, the order "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." 437 U.S. at 468, 98 S.Ct. 2454. Such requirements are "substantively similar to the requirements under Pennsylvania Law." *Commonwealth v. Johnson*, 550 Pa. 298, 302, n. 2, 705 A.2d 830, 832, n. 2 (1998).

Furthermore, the right to counsel of choice is not absolute.

*Johnson,* 550 Pa. at 305–306, 705 A.2d at 834. (emphasis added).

¶ 11 Accordingly, the Court in *Johnson* held that an order removing one's counsel of choice from representation is interlocutory and not immediately appealable in the criminal context. Where, as here, appellants' interests are not clearly any more essential than the interests in liberty that defendants in criminal trials hold, we see no reason to refrain from applying the *Cohen* criteria to the case at bar.

■ ¶ 12 It is well-settled that there exists in parents a right to counsel in dependency cases, which right derives from the Juvenile Act's Section 6337.[3] *In re S.M.,* 418 Pa.Super. 359, 614 A.2d 312 (1992). *In Matter of J.P.,* 393 Pa.Super. 1, 573 A.2d 1057 (1990)(*en banc*) (citing *Interest of DelSignore,* 249 Pa.Super. 149, 375 A.2d 803 (1977)); This right to counsel has also been expressed as a right to effective assistance of counsel, such that the denial of effective assistance is tantamount to having proceeded with no counsel at all. *In re S.M., supra.*

■ ¶ 13 This Court has not expressly decided when a parent may first command review of a claim that she has been denied her right to counsel in a dependency proceeding.[4] Our precedent does make clear, however, that a parent's claim that she was essentially denied counsel because of counsel's ineffectiveness at a dependency hearing is capable of vindication in an appeal filed after the entry of a dependency and dispositional order. *In re S.M., supra* at 316; *In Matter of J.P., supra* at 1057. We determined that a procedural scheme permitting such post-dependency adjudication appeals satisfactorily reconciles the

3. Section 6337 states, in pertinent part, that

a party is entitled to representation by legal counsel at all stages of any proceeding under this chapter and if he is without financial resources or otherwise unable to employ counsel to have the court provide counsel for him.

42 Pa.C.S.A. § 6337.

4. Mother points to *dicta* in *Duttry* stating that certain proceedings in the juvenile system, such as dependency, paternity, and termination proceedings, carry consequences of such gravity that an order denying a parent's request for the appointment of counsel in these proceedings may "authorize the immediacy of [a] denial-order for appellate review." *Duttry,* 576 A.2d at 58. For purposes of the case before us, we refuse to equate the denial of Mother's request to change counsel, particularly where counsel had not been alleged ineffective or to have had a conflict of interest, with the denial of appointment of counsel altogether. Though Mother also directs our attention to *Commonwealth v. Rucker,* 563 Pa. 347, 349–350, 761 A.2d 541, 542 (2000) for the proposition that "a defendant has a constitutional right to choose any lawyer he may desire, at his own cost and expense[,]" dependency adjudications may be readily distinguished with criminal trials in that parents' constitutional liberty interests are not implicated in dependency adjudications as are defendants' in criminal trials. *In re S.M., supra.* Nor do dependency adjudications set out to determine the status of parents as criminal trials do defendants, but instead have as their overriding purpose the provision of what is in the best interests of children. Indeed, the interests of parents under Juvenile Act procedures involving a potential adjudication of dependency are truly subordinate. The ability of parents to obtain counsel of their choice in dependency proceedings, therefore, must be commensurate to such diminished interests they have been accorded under the Juvenile Act. Finally, we note, as Mother herself concedes, that not even criminal defendants—whose rights are paramount in the criminal system—have an absolute right to counsel of their own choosing, but may exercise the right only at a reasonable time and in a reasonable manner, in light of the state's interest in efficiently administering justice. *See Rucker,* 563 Pa. at 351, 761 A.2d at 543. *See also Johnson, supra* (the denial of counsel of choice is interlocutory and not immediately appealable).

interests of parents with the paramount aim of acting in the best interests of children, as such a scheme would avoid piecemeal litigation on a typically collateral matter likely to disrupt efficient, and delay final, adjudication of the child's case. *In re S.M., supra.; In Matter of J.P., supra.*[5]

¶ 14 As they endorse a process which necessarily depends on the proposition that parents' rights to counsel are not lost after an adjudication of dependency is entered, the cases *supra* lead us to conclude that Mother has not satisfied the third prong of the *Cohen* criteria.[6] The lower court did not enter an order that finally disposed of Mother's right to counsel as provided under the Juvenile Act, as such a right is reviewable and recoverable after the determination of dependency. Thus, where no right held by Mother was lost by the lower court's order denying Mother's request to change counsel, an immediate appeal from such order was not necessary.

■ ¶ 15 We hold that the order appealed is interlocutory, fails to satisfy any of the *Cohen* exceptions to the finality rule, and thus fails to qualify as appealable under Rule 313. Accordingly, we quash.[7]

¶ 16 Appeal quashed.

¶ 17 KLEIN, J., files a dissenting opinion.

KLEIN, J., Dissenting.

¶ 1 I respectfully dissent. I disagree with the Majority's decision to quash this appeal. In my opinion, the trial court's order denying Mother's motion to change counsel at an adjudicatory hearing on a dependency petition is a collateral order appealable under Pa.R.A.P. 313(b). *See Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)). Mother's right to retain separate counsel in dependency matters is too critical to deny or defer appellate review.

¶ 2 The Juvenile Act contains procedural safeguards to ensure that a finding of dependency does not automatically follow the filing of a dependency petition. One of these safeguards is a parent's right to counsel throughout the dependency proceedings. *See* 42 Pa.C.S.A. §§ 6332, 6337; *In re A.S.*, 406 Pa.Super. 466, 594 A.2d 714 (1991); *In Interest of S.N.W.*, 362 Pa.Super. 295, 524 A.2d 514 (1987); *see also Matter of J.P.*, 393 Pa.Super. 1, 573 A.2d 1057 (1990) (although parent's liberty interests are not implicated, dependency proceeding is adversarial in sense that it places state in opposition to parents with respect to the custody of child). The ma-

---

5. We acknowledge Mother's argument that deferring review of claims challenging the denial of preferred counsel itself holds the potential that we may reverse and remand, thereby undoing a final adjudication and prolonging the unsettled state of a child's case. Nevertheless, we determine that the mere potential for undoing a final order on appeal is preferable to the guarantee of pre-adjudication delay that would result if pre-dispositional orders as hers were immediately appealable.

6. Additionally, we doubt whether the order "conclusively determined the dispute in question" as required under the *Cohen* first prong as restated in *Coopers & Lybrand, supra.* The

trial court explicitly left the possibility of granting Mother's requested change of counsel should reason—such as Mother and Father no longer presenting a unified case for N.B.—arise.

7. In Mother's letter to this Court dated 9/13/01, she informs the Court that N.B. was later adjudicated dependent and committed to the custody of the Department of Human Services on July 13, 2001. Even were Mother to have filed her appeal from the July 13, 2001 order, the record does not show reversible error in the court's retention of appointed counsel absent allegations of ineffectiveness or existing conflict of interest.

jority concludes that the right to counsel can be vindicated post-dependency and this "satisfactorily reconciles the interests of parents with the paramount aim of acting in the best interests of children ..." (Majority Opinion, at 535–36). I disagree. The safeguard is useless if it must be tested before it is honored. If the right to counsel is given meaning only upon a finding of dependency, the process has commenced beyond that for which the safeguard was intended. We cannot give back to either Mother or child the lost time together, nor can we undo the inevitable damage to their relationship. The potential loss at stake here is too critical to adopt a "wait and see" approach. *Cf. Commonwealth v. Johnson*, 550 Pa. 298, 705 A.2d 830, 835–37, (Zappala J., dissenting) ("The right to chosen counsel is too important to simply wait and see if an acquittal will make it unnecessary for an appellate court to vindicate the right .... If a defendant is forced to suffer the loss of the benefits that a right is intended to protect, then it does not matter that, after the fact, a court is willing to reinstate that right in a technical fashion. Practically speaking, the defendant will only be able to recover those benefits that survived the erroneous denial of the right in the first place."). Although services designed to eliminate the conditions that may lead to removal are required by statute, return to the parents is not inevitable. *See* 42 Pa. C.S.A. § 6351(f)(2); *In re J.S.W.*, 438 Pa.Super. 46, 651 A.2d 167 (1994).

¶ 3 I am somewhat baffled at the trial court's refusal to allow Mother separate counsel in the circumstances presented here. The trial court had appointed counsel for both parents on March 23, 2001, finding that Mother and Father had identical interests. Two weeks later, at an adjudicatory hearing, Mother informed the court that she wished to be represented by separate counsel and her separately retained counsel was present and ready to proceed with the hearing. Court-appointed counsel had no objection. Delay in the proceedings was not a factor. The trial court, however, concluding Mother's and Father's interests were identical, denied Mother's request, and counsel, a Community Legal Services attorney, was precluded from entering her appearance on behalf of Mother. The court noted it would appoint separate counsel in the event that the parents' interests diverged. It appears from mother's request alone that the parents' interests were no longer united.

¶ 4 In conclusion, I would allow mother's appeal from the trial court's order denying her request for change of counsel. Jurisdiction properly lies in this Court because the order appealed from is separable from and collateral to the main cause of action and implicates concerns too important to deny or defer appellate review. *See Katz v. Katz*, 356 Pa.Super. 461, 514 A.2d 1374, 1376–77 (1986) (citing *Cohen, supra*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)). In my view, denial of Mother's request for separate counsel is equivalent to denial of counsel and violates her procedural rights under the Juvenile Act. *Cf. Duttry v. Talkish*, 394 Pa.Super. 382, 576 A.2d 53, 58 (1990) ("We do not find that the denial of the appellant's request for the appointment of counsel to aid him in his effort to secure partial custody/visitation rights has such cr[itical] connotations, as in termination, paternity, *dependency* or involuntary commitment hearings, to authorize the immediacy of his denial-order for appellate review."). The majority's concern with avoiding piecemeal litigation overlooks the caution that the government's power to interfere in family relationships be exercised only with extreme care. *See In Interest of Michael Y.*, 365 Pa.Super. 488, 530 A.2d 115 (1987).