J-A23015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: E.A., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: E.A., JR., FATHER | : | No. 782 MDA 2022 |

Appeal from the Order Entered April 25, 2022
In the Court of Common Pleas of York County Juvenile Division
at No(s): CP-67-DP-0000188-2020

| IN THE INTEREST OF: B.W., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.A., JR., FATHER | : | No. 783 MDA 2022 |

Appeal from the Order Entered April 25, 2022
In the Court of Common Pleas of York County Juvenile Division
at No(s): CP-67-DP-0000191-2020

BEFORE:     BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                **FILED:  DECEMBER 16, 2022**

In these dependency matters, E.A., Jr. (Father), appeals from the April

25, 2022, orders entered in the York County Court of Common Pleas, denying

his petitions to appeal *nunc pro tunc* from the findings he is a perpetrator of

_____

[*] Former Justice specially assigned to the Superior Court.

child abuse[1] against his sons, E.A. (El.A.,[2] born in August of 2019), and B.W. (born in May of 2014).[3] We reverse and remand for the trial court to reinstate Father's appeal rights *nunc pro tunc* and to appoint new counsel.

## I. Introduction

In addition to El.A. and B.W., Father and Mother (collectively, the Parents) are the parents of Ed.A. (born in June of 2015), R.A. (June of 2018), and A.A. (June of 2021) (collectively, the Children). Both Parents have several appeals currently pending before this Court, as follows.

First, we summarize that on January 13, 2022, the trial court changed the permanency goals for all five Children from reunification to adoption. The Parents' appeals therefrom are pending before a different panel of this Court at Dockets 201 through 205 MDA 2022 (Father's appeals) and 295 through

---

[1] **See** 23 Pa.C.S. § 6303 (defining "perpetrator" as, *inter alia*, a parent who has committed child abuse against their child).

[2] As Father and T.W.A. (Mother) have two children with the initials, "E.A.," we will refer to the child E.A. as "El.A." and the child, E.A., III, as "Ed.A."

[3] The trial court issued two orders — one each at El.A.'s and B.W.'s dockets — and Father properly filed two notices of appeal. Thus, **Walker** is not implicated. **See Commonwealth v. Walker**, 185 A.3d 969, 971 (Pa. 2018) ("[W]here a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case."), *overruled in part*, **Commonwealth v. Young**, 265 A.3d 462, 477 (Pa. Dec. 22, 2021) (reaffirming that Pa.R.A.P. 341 requires separate notices of appeal when single order resolves issues under more than one docket, but holding Pa.R.A.P. 902 permits appellate court to consider appellant's request to remediate error when notice of appeal is timely filed). On June 17, 2021, this Court *sua sponte* consolidated the two appeals.

299 MDA 2022 (Mother). As of this writing, those appeals are stayed pending resolution of the Parents' other appeals.

Meanwhile, on March 10, 2022, the trial court entered the underlying orders, finding both Parents were perpetrators of abuse as to B.W. and El.A. As we discuss **infra**, Father did not file timely notices of appeal, but instead filed petitions to reinstate his appeal rights *nunc pro tunc*. The trial court denied relief, and this memorandum will review that decision. Meanwhile, Mother's timely appeal, at Dockets 545 and 546 MDA 2022, will be disposed of separately by this panel.

Finally, on April 18, 2022, the trial court involuntarily terminated both Parents' rights to all five Children. Father's appeals therefrom are pending before this panel at Dockets 683 through 687 MDA 2022. Mother's appeals are docketed at 755 through 759 MDA 2022. Additionally, counsel for El.A. and R.A. have appealed at, respectively, Dockets 740 and 741 MDA 2022.

## II. Procedural History

A detailed review of the underlying factual history is not necessary for our disposition. Instead, we briefly summarize the following procedural history. Initially, the York County Offices of Children, Youth and Families (CYF) received a referral that the Parents were using heroin and not properly supervising the Children. On September 16, 2020, B.W., Ed.A., R.A., and El.A., who were then six, five, two, and one year old, were adjudicated

dependent. A.A. was subsequently born in June of 2021 and was adjudicated dependent the following month.

Meanwhile, on December 29, 2020, CYF received a referral from Child Protective Services, which alleged Father and Mother physically abused B.W., then approximately six years old. N.T., 3/10/22, at 23-24. On January 26, 2021, the York County Children's Advocacy Center (CAC) conducted a forensic interview of B.W. *See id.* at 10, 26. CYF Caseworker Kristen Marshall, as well as law enforcement, observed this forensic interview.[4] *Id.* at 27. According to the subsequent testimony of the CAC forensic interviewer, as well as CYF Caseworker Marshall, B.W. disclosed he and siblings were abused by both Parents. *Id.* at 12-13, 28-29. His statements led to an abuse referral as to El.A.

At a status review hearing on January 11, 2022, CYF reported it found Mother and Father indicated as perpetrators of physical abuse against both B.W. and El.A., for causing bodily injury. N.T., 1/11/22, at 7. With respect to El.A. only, both Parents were also indicated for striking a child under the age of one. *Id.* at 6-7. The trial court changed all the Children's permanency goals to adoption.[5]

---

[4] Caseworker Marshall explained that when CYF receives a CPS referral, CYF must notify the police. N.T., 3/10/22, at 27.

[5] As stated above, both Mother and Father have appealed from the goal change orders. *See* 201 through 205 MDA 2022; 295 through 299 MDA 2022.

Next, on March 10, 2022, the trial court conducted the underlying finding of abuse hearing. The Children were represented by a guardian *ad litem* and separate legal counsel. N.T., 3/10/22, at 4. Mother and Father were present but did not testify. Particularly, we note Father's counsel was Thomas Gregory, Esquire, at both the hearing and in this present appeal. On that same day, the trial court found both Father and Mother were perpetrators of abuse against El.A. and B.W.

Each Parent had until Monday, April 11, 2022, to file a timely appeal.[6] *See* Pa.R.A.P. 903(a) (generally, notice of appeal shall be filed within 30 days after the entry of the order). Mother timely appealed and, as stated above, her appeals are pending before this panel at Dockets 545 and 546 MDA 2022.

Father, however, did not timely appeal and instead, on April 22, 2022, filed counseled petitions to reinstate his appeal rights *nunc pro tunc*. Counsel averred he had prepared a notice of appeal, Pa.R.A.P. 1925(a)(2)(i) concise statement of errors complained of on appeal, and a request for a transcript, and believed that all were filed on April 6th. However, on April 22nd, counsel wondered why he had not yet received a Superior Court docketing statement, and accordingly learned only the request for transcript was filed on April 6th.

---

[6] The 30th day after March 10, 2022, was Saturday, April 9th. However, under our filing rules, Father had until the following Monday to file a notice of appeal. *See* 1 Pa.C.S. § 1908 (when last day of any period of time referred to in any statute falls on Saturday, Sunday, or legal holiday, such day shall be omitted from computation).

On April 25, 2022, the trial court denied Father's petitions seeking appeals *nunc pro tunc*. Relying on ***Criss v. Wise***, 781 A.2d 1156 (Pa. 2001), and ***Bass v. Commonwealth***, 401 A.2d 1133 (Pa. 1979), the court found there were no "non-negligent" circumstances. Trial Ct. Op., 6/23/22, at 11. ***See Interest of I.M.S.***, 267 A.3d 1262, 1264 (Pa. Super. 2021) (***I.M.S.***) (under ***Criss*** and ***Bass***, *nunc pro tunc* relief may be granted when: (1) a litigant demonstrates the late filing was due to non-negligent circumstances on counsel's part; (2) the document was filed shortly after the date it was due; and (2) the other party was not prejudiced by the delay).

Father timely filed two notices of appeal and Rule 1925 concise statements of errors complained of on appeal.

### III. Statement of Question Presented

On appeal, Father presents the following issue for review:

Did the [Trial] Court abuse its discretion or exercise manifestly unreasonable judgment in denying the requests to appeal the Court's finding of abuse *nunc pro tunc*?

Father's Brief at 4.

### IV. Standard of Review & Relevant Law

We review an order denying a petition to appeal *nunc pro tunc* for an abuse of discretion, "which includes circumstances where 'the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable[.]'" ***I.M.S.***, 267 A.3d at 1264 (citation omitted).

This Court has explained:

Typically, a notice of appeal must be filed within thirty days of the date that the order is entered on the record. *See* Pa.R.A.P. 903. [Pursuant to *Criss*, 781 A.2d at 1159-60, and *Bass*, 401 A.2d at 1135-36,] in the context of the civil case, *nunc pro tunc* relief may be granted when a litigant demonstrates that the late filing was due to non-negligent circumstances on counsel's part, the document was filed shortly after the date it was due, and the other party was not prejudiced by the delay.

*I.M.S.*, 267 A.3d at 1264. However,

[i]t is well-settled that there exists in parents a right to counsel in dependency cases, . . . derive[d] from the Juvenile Act's Section 6337.[7] This right to counsel has also been expressed as a right to effective assistance of counsel, such that the denial of effective assistance is tantamount to having proceeded with no counsel at all.

*In re N.B.*, 817 A.2d 530, 535 (Pa. Super. 2003) (citations omitted).

In *I.M.S.*, this Court held counsel's failure to file timely appeals, from both the involuntary termination decree and the goal change order, "constitutes ineffectiveness *per se*, and 'the typical remedy for such ineffectiveness is to remand for an appeal *nunc pro tunc*.'" *I.M.S.*, 267 A.3d at 1265 ( citations omitted). Thus, we held the trial "court's refusal to grant relief in the face of *per se* ineffectiveness is tantamount to an abuse of discretion." *Id.* at 1266.

---

[7] *See* 42 Pa.C.S. § 6337 ("[A] party is entitled to representation by legal counsel at all stages of any proceedings under this chapter and if he is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him.").

In so holding, this Court rejected as "inapt" the trial court's reliance on the general three-prong *nunc pro tunc* analysis outlined in **Bass**, 401 A.2d 1133, and **Criss**, 781 A.2d 1156.  **I.M.S.**, 267 A.3d at 1266.  "[U]nlike the majority of civil cases, the fundamental rights at issue in a termination of parental rights proceeding implicate due process protections that are more akin to those afforded a criminal defendant."  **I.M.S.**, 267 A.3d at 1266.  The **I.M.S.** Court reasoned:

> [T]he **Bass** analysis's reference to a 'non-negligent' reason presumes an ordinary degree of professional skill that was absent in this case.  Hence, the trial court's application of the typical three-pronged *nunc pro tunc* analysis of a non-negligent omission was inherently flawed.  In this situation, where appointed counsel failed to file the requested appeal and the *nunc pro tunc* request was promptly filed, [the m]other was entitled to relief virtually as of right.

**Id.** at 1266.

## V.  Analysis

On appeal, Father acknowledges he failed to timely appeal, but asserts his

> counsel prepared the necessary documentation for the appeals and provided it to his secretary for filing.  For some reason, the secretary only filed the request for a transcript[, which was docketed.]  Approximately eleven days later, Counsel asked his secretary to contact the Prothonotary of the Superior Court and ask why a docketing statement request was not yet received.  It was then that Counsel learned that the appeal was not filed.  Requests to [a]ppeal *nunc pro tunc* were then filed that day.

Father's Brief at 12.  Father contends that while counsel's secretary made "an error," the failure to file timely appeals was not due to any negligence on his

or his counsel's part. *Id.* at 16, 17. In the alternative, Father argues that if counsel were negligent, the *nunc pro tunc* appeals "should be permitted as [he] was entitled to effective assistance of counsel," pursuant to **I.M.S.** *Id.* at 12-13. Next, Father asserts the petitions to appeal *nunc pro tunc* were promptly filed, and CYF would not be prejudiced if relief had been granted. *Id.* at 17-18. Finally, Father notes these dependency matters have been "very contested and contentious." *Id.* at 16.

In their joint appellee's brief, CYF and the Children's guardian *ad litem* agree the trial court "should have granted" Father's petition for *nunc pro tunc* relief, and states they would not be prejudiced, as Mother has a currently pending appeal from the same finding of abuse order. CYF & Guardian *Ad Litem's* Brief at 12. We conclude Father is entitled to relief.

First, we agree with the trial court that, regardless of any actions by counsel's secretary, Father's counsel was negligent in failing to timely file the notices of appeal. However, we determine the trial court's reliance on the traditional three-prong analysis of **Criss** and **Bass** was an abuse of discretion. **See I.M.S.**, 267 A.3d at 1264. Instead, pursuant to **I.M.S.**, counsel's failure to file the requested appeal was *per se* ineffectiveness, which entitled him to "relief virtually as of right." **See id.** at 1266.

We consider the trial court's reasoning that **I.M.S.** does not extend to this appeal, as it does not involve the termination of parental rights, but rather a finding of abuse. **See** Trial Ct. Op., 6/23/22, at 12 n.2. In **I.M.S.**, this

Court reasoned that in Pennsylvania, a parent in a termination proceeding cannot pursue a claim of ineffective counsel in a collateral proceeding. *I.M.S.*, 267 A.3d at 1266. Thus, "counsel's failure to file the requested appeal stripped [the m]other of her fundamental right to challenge the termination[,]" and then the trial court's denial of relief "foreclosed [her] only available remedy[.]"

Here, although the underlying order goes to Father's finding of abuse under the Child Protective Services Law,[8] and not dependency proceedings under the Juvenile Act,[9] we apply the above rationale of *I.M.S.* and conclude Father is entitled to relief. The underlying finding of abuse hearings were held, and docketed at, the Children's dependency dockets, and the trial court foreclosed Father's only available remedy. *See id.* at 1267.

Accordingly, consistent with the disposition in *I.M.S.*, we reverse the trial court's orders denying Father's petitions for *nunc pro tunc* relief. *See I.M.S.*, 267 A.3d at 1267. We remand for the court to reinstate his appellate rights *nunc pro tunc* and to appoint new counsel.

---

[8] 23 Pa.C.S. §§ 6301-6388.

[9] 42 Pa.C.S. §§ 6301-6375.

## VI. Conclusion

For the foregoing reasons, we reverse the denial of *nunc pro tunc* relief for Father. ***See I.M.S.***, 267 A.3d at 1267. We remand for the court to reinstate his appellate rights *nunc pro tunc* and to appoint new counsel.

Orders reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2022