J-S30021-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 748 EDA 2025 |

Appeal from the Order Entered February 14, 2025
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-DP-0000035-2013

BEFORE: OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY MURRAY, J.: **FILED SEPTEMBER 24, 2025**

K.S. (Father) appeals from the order granting the dependency petition filed by Delaware County Children and Youth Services (CYS), and adjudicating dependent K.S. (Child), Father's son born in September 2012. We affirm.

C.G. (Mother) gave birth to Child while Mother was incarcerated. Child lived with Father until November 2012, when Father was arrested and subsequently incarcerated. In 2013, the juvenile court adjudicated Child dependent and placed him in kinship foster care. In 2015, the juvenile court terminated court supervision and returned Child to Father's custody. In 2019, the juvenile court again adjudicated Child dependent, but Child remained in Father's custody until the termination of court supervision in 2020.

_____

[*] Retired Senior Judge assigned to the Superior Court.

On November 19, 2024, CYS filed the instant dependency petition, alleging Child was "without proper [parental] care or control." Dependency Petition, 11/19/24, at 1.[1] The petition alleged that on October 7, 2024, Father "physically abused [Child] with an electrical cord," prompting Child to "run away from [Father's] home" to the home of a paternal cousin (Cousin). *Id.* at 6. Cousin called police, who responded to Cousin's home, where an altercation between Father and police resulted in Father's arrest. *Id.* Thereafter, Child began living with a "CYS-approved" paternal relative (Relative). *Id.* at 1.[2]

The juvenile court appointed Daniel Armstrong, Esquire (trial counsel), to represent Father. On February 12, 2024, a dependency hearing was held before Hearing Officer David McNulty (hearing officer). Based on the hearing testimony, the juvenile court made the following factual findings:

> [M]ultiple witnesses credibly testified as to the physical abuse that occurred.... First, Sara Lincoln [(Ms. Lincoln)], the CYS caseworker initially assigned to this matter, provided credible testimony. [Ms.] Lincoln [testified that she] arrived at [Cousin's] home following the 911 call [on October 7, 2024]. N.T., 2/12/25, at 9. [Ms. Lincoln] witnessed a "large police presence out front" and "heard a child scream from inside." *Id.* at 19-20, 24-25. She credibly testified that Child said he feared [F]ather and that

---

[1] Pertinent to the instant appeal, CYS did **not** check a box on the form petition indicating that "the above named child is a victim of child abuse as defined by 23 Pa.C.S.[A.] § 6303." Dependency Petition, 11/19/24, at 1.

[2] The petition alleged that Mother "is not a [parental] resource for [Child] at this time"; Mother "does not wish to be involved with [CYS]"; and Mother's "exact whereabouts are … unknown," though she "reports she is living somewhere in California." Dependency Petition, 11/19/24, at 6.

- 2 -

[F]ather uses physical discipline. *Id.* at 9. She testified [that] Child had visible marks on his body[, which] Child stated were from the physical discipline of [F]ather. *Id.* at 10. [Ms. Lincoln testified that she observed] Child "had scabs on his knees … [and] a scab on his chest." *Id.* at 19. [Ms. Lincoln testified, "Child] stated that [F]ather hit him with belts and other objects." *Id.* at 10. She continued, … "[Child] was scared. It looked like he had just been crying. He … wasn't able to sit still. He just kept asking me, 'Are you taking me back to my dad? Are you taking me back to my dad?'" *Id.* at 12.

Second, Dr. June Elcock-Messam [(Dr. Messam)], an expert certified in the fields of general pediatrics and child abuse pediatrics, provided credible testimony. Dr. Messam became involved with Child after he was referred to her to be evaluated for child abuse, and she saw Child most recently on November 15, 2024. *Id.* at 23. According to Dr. Messam, Child "had reported that [F]ather had punched him and choked him as punishment, [and] that [Father] put a sock in [Child's] mouth so that when [Child] screamed, no one could hear him. And [Child] reported that [F]ather hit him with a belt." *Id.* at 24. Dr. Messam observed that Child had markings from injuries from an unknown date. *Id.* at 20, 24-25. Specifically, she noted Child had "scars in unusual locations, like on his cheeks.["] … *Id.* at 20. [According to Dr. Messam, "Child] did have healed scars on his cheek, on his forehead, on his right arm, and some scars on his upper back, lower back, and [his] right clavicle." *Id.* at 24. Dr. Messam credibly reported her findings were [consistent] with child abuse. *Id.* at 25.

Third, Yamilet [] Riverra-Rios [(Ms. Rios)], the CYS caseworker to whom Child was assigned after [Ms.] Lincoln, provided … credible testimony concerning whether Child was receiving proper parental care. [Ms.] Rios noted that [Father] has not signed any releases. *Id.* at 44. Because Father refused to [sign releases], Child … had still not received any therapy [as of the date of the hearing]. *Id.*

Finally, even Father's self-serving testimony mostly corroborated the allegations of abuse. [Father testified,] "I hit [Child] with a belt in June, because he stole some money, and he didn't tell me the truth…. I tried to question him about it, and he lied." *Id.* at 52-53. Father was incarcerated for ten days following the October 7, 2024[, incident]. *Id.* at 55. Father [testified] that

all [criminal charges arising from that incident had been] dismissed.

Juvenile Court Opinion, 5/7/25, at 2-4 (record citations modified; footnotes omitted).

The juvenile court also found events that occurred in the courthouse immediately before the commencement of the dependency hearing "raise concerns about whether Child receives proper parental care…." *Id.* at 4. Dr. Messam testified that before the hearing commenced, she heard Father

> say threatening things to [Child], which is why I took [Child] for a walk. That's not physical abuse. But it terrified [Child]. So that's why I took him walking. This is a very unsafe situation. [Child] did not feel safe sitting out there, so he and I were drawing.

N.T., 2/12/25, at 38. Dr. Messam did not specify Father's statements, but testified, "It was quite disturbing. And if that's done in public, what is being done in private?" *Id.* at 39. As the juvenile court found, "Father denied making threats to Child, [but] he acknowledged that the way he talks 'might be perceived as something threatening.'" Juvenile Court Opinion, 5/7/25, at 4 (quoting N.T., 2/12/25, at 65).

At the hearing's conclusion, CYS argued it had presented clear and convincing evidence of "a lack of proper parental care and control." N.T., 2/12/25, at 65.[3] CYS further argued that "the [c]ourt should also make a

---

[3] Child's guardian *ad litem* (GAL) stated that Child "told me he does not want to see [Father]." N.T., 2/12/25, at 67. GAL supported CYS's request for a dependency adjudication, and argued Child and Father "obviously … need to have a slow reunification." *Id.*

finding of abuse in this matter." ***Id.*** The hearing officer stated on the record that he would recommend that Child be adjudicated dependent, and that the juvenile court make a finding of abuse. ***Id.*** at 68, 72. Pertinently, trial counsel did not object to CYS's request for a finding of abuse, or the hearing officer's statement that he would recommend such a finding. ***See id.*** at 65, 72.

On February 12, 2025, following the hearing, the hearing officer filed a Recommendation for Adjudication and Disposition which, *inter alia*, (1) recommended that Child be adjudicated dependent; (2) found that CYS proved "by clear and convincing evidence" that Child "is without proper [parental] care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals…."; (3) found that Child "is a victim of child abuse [by Father] as defined at 23 Pa.C.S.[A.] § 6303…."; (4) found that Child "is safe in the current placement setting" with Relative; (5) stated Child's placement goal is reunification with his parents; and (6) directed Father to, *inter alia*, cooperate with CYS, participate in a psychological evaluation and recommended treatment, participate in parenting classes, sign any releases pertaining to Child, and be supervised by a CYS-approved caregiver when caring for Child.[4] Recommendation, 2/12/25, at 1-2.

---

[4] The recommendation further directed Mother to cooperate with CYS. Mother appeared at the dependency hearing via telephone, but did not participate substantively. Mother indicated she lives in Reno, Nevada. N.T., 2/12/25, at
*(Footnote Continued Next Page)*

On February 14, 2025, the juvenile court entered an order, finding that "the recommendation by the Hearing Officer is in the best interest of [C]hild and is hereby adopted and ordered."  Order, 2/14/25.

On February 18, 2025, though still represented by trial counsel, Father purported to file a *pro se* notice of appeal[5] to the Commonwealth Court, along with a *pro se* concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925.  On March 26, 2025, the Commonwealth Court transferred the appeal to this Court.  On April 9, 2025, Father purported to file a *pro se* docketing statement in this Court.  On April 16, 2025, this Court entered an order striking the *pro se* docketing statement and directing trial counsel to file a docketing statement.  Order, 4/16/25 (citing **Commonwealth v. Jette**, 23 A.3d 1032 (Pa. 2011), which emphasizes that hybrid representation is forbidden on appeal).  By a separate order entered on the same date, we directed trial counsel to file an amended concise statement "in accordance with the relevant requirements of Pa.R.A.P. 1925."  Order, 4/16/25 (citing **Jette**, **supra**).

_____

71.  Mother also indicated she did not request court-appointed counsel, and stated she could afford to hire counsel.  **Id.** at 70.

[5] Father purported to appeal from an order entered on February 12, 2025. However, our review discloses the juvenile court's order adopting the hearing officer's recommendation was docketed on February 14, 2025.  Father's appeal properly lies from this order, and we have amended the caption accordingly.

On April 25, 2025, trial counsel timely filed a docketing statement and an amended concise statement. The juvenile court subsequently filed an opinion pursuant to Rule 1925(a).

Also on April 25, 2025, trial counsel filed in this Court an application for leave to withdraw as counsel, averring that Father informed trial counsel that Father wanted to pursue his appeal *pro se*, and accused trial counsel of "never working for [Father, but rather] working for [the hearing officer] and CYS." Application for Leave to Withdraw, 4/25/25, ¶ 8. On May 1, 2025, this Court denied the application without prejudice and directed trial counsel to seek the requested relief in the juvenile court. We further ordered that, should the juvenile court grant trial counsel leave to withdraw, it should either appoint new counsel or conduct an on-the-record colloquy confirming Father's desire to represent himself, pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). On May 8, 2025, Father filed in this Court an application to proceed *pro se*. On May 12, 2024, we entered an order transmitting Father's application to the juvenile court, to be considered in light of our May 1, 2025, order.

Trial counsel subsequently filed an application for leave to withdraw in the juvenile court. The juvenile court scheduled a hearing on the application for May 21, 2025. Father failed to appear at the hearing. **See** Juvenile Court Order, 5/23/25, ¶ 2. Trial counsel subsequently learned that Father was incarcerated. **Id.**, ¶ 11. On May 23, 2025, Father appeared before the

juvenile court from jail via videoconference. *Id.*, ¶ 12. Father testified that he had irreconcilable differences with trial counsel, but stated he still wanted legal representation. *Id.*, ¶¶ 13-16. The juvenile court granted trial counsel leave to withdraw, and appointed Shelly Chauncey, Esquire (appellate counsel), to represent Father.

On July 7, 2025, appellate counsel filed a brief in this Court on Father's behalf. Father presents four issues for our review:

> 1. Did the trial court abuse its discretion by considering and making a finding of abuse that was not alleged in the dependency petition and for which [Father] was not afforded proper notice?
>
> 2. Did the trial court err in adjudicating [C]hild dependent under 42 Pa.C.S.[A.] § 6302[,] where the evidence was legally insufficient to establish that [C]hild was without proper parental care and control, and where the court improperly relied on inadmissible hearsay and unsupported allegations?
>
> 3. Did the trial court err in finding that [C]hild was the victim of abuse under 23 Pa.C.S.[A.] § 6303(b.1), where the evidence was legally insufficient to establish abuse by clear and convincing evidence, and the court failed to consider [Father's] constitutionally protected religious beliefs in assessing the reasonableness of the alleged conduct?
>
> 4. Was trial counsel ineffective for failing to object to inadmissible hearsay that formed the basis for the dependency adjudication and a finding of abuse?

Father's Brief at iii.

> The standard of review
>
> in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the juvenile court if they are supported by the record; but it does not require the appellate court to accept the juvenile court's inferences or conclusions of law.

***Int. of M.G.***, 331 A.3d 703, 716 (Pa. Super. 2025) (citations omitted).

Before addressing Father's issues, we must determine whether they are properly before us. We observe that CYS argues each of Father's issues is waived for appellate review.[6] CYS Brief at 8-11.[7] For the reasons set forth below, we agree.

In his first issue, Father argues the juvenile court abused its discretion in making a finding of abuse under 23 Pa.C.S.A. § 6303(b.1), where the dependency petition did not request such a finding, and CYS requested the finding only at the dependency hearing's conclusion. Father's Brief at 4-5. Father maintains he was not afforded "the opportunity to prepare for such a finding and present testimony and evidence on his behalf regarding that request." ***Id.*** at 5.

Father waived this claim by failing to raise it in the juvenile court. ***See Int. of M.G.***, 331 A.3d at 714 ("Issues not raised before the juvenile court are waived and cannot be raised for the first time on appeal." (citing Pa.R.A.P.

---

[6] In its Rule 1925(a) opinion, the juvenile court opined that Father's issues were waived due to his failure to raise his claims before the juvenile court. ***See*** Juvenile Court Opinion, 5/7/25, at 5-6, 9-10. The juvenile court referred to the issues identified in Father's concise statement, which, as discussed below, differ significantly from the issues Father raises in his appellate brief.

[7] GAL filed a joinder adopting CYS's brief. ***See*** GAL Joinder, 8/4/25.

302(a))). Father also waived the claim by failing to include it in his amended concise statement.[8]

> [I]t is well-settled that issues not included in an appellant's … concise statement of errors complained of on appeal are waived. ***Krebs v. United Refining Co. of Pa.***, 893 A.2d 776, 797 (Pa. Super. 2006) (citations omitted) ("We will not ordinarily consider … any issue not raised in a statement of matters complained of on appeal is deemed waived."). **With respect to issues not included in a concise statement, our Supreme Court has instructed that this Court has <u>no discretion</u> in choosing whether to find waiver.** Waiver is mandatory, and this Court may not craft *ad hoc* exceptions or engage in selective enforcement. ***City of Philadelphia v. Lerner***, 151 A.3d 1020, 1024 (Pa. 2016) (quoting ***Commonwealth v. Hill***, 609 Pa. 410, 16 A.3d 484, 494 (2011)).

***In re M.Z.T.M.W.***, 163 A.3d 462, 466 (Pa. Super. 2017) (emphasis added); ***see also*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

Even if the claim was not waived under Rules 302 and 1925, we would deem it waived due to Father's failure to properly develop the argument in his brief, with citations to pertinent authority. ***See In re M.Z.T.M.W.***, 163 A.3d at 465 ("It is well-settled that this Court will not review a claim unless it is

---

[8] As hybrid representation is prohibited, Father's *pro se* concise statement is a legal nullity. ***See S.C.B. v. J.S.B.***, 218 A.3d 905, 911 n.4 (Pa. Super. 2019). Nevertheless, we observe that the *pro se* statement does not clearly identify any of the issues Father advances in his brief. The *pro se* statement contains 43 numbered paragraphs and consists mostly of factual assertions and legal argument, rather than identification of appellate issues. ***See*** *Pro Se* Concise Statement, 2/18/25.

developed in the argument section of an appellant's brief, and supported by citations to relevant authority."); *see also* Pa.R.A.P. 2119(a) (requiring discussion and citation of pertinent authorities). Father cites only one authority for the general proposition that "[d]ue process requires that the litigants receive notice of the issues before the court and an opportunity to present their case in relation to those issues…." Father's Brief at 4 (citing *In Int. of M.B.*, 514 A.2d 599, 601 (Pa. Super. 1986)). Father cites no authorities relating to procedures involved in abuse findings under 23 Pa.C.S.A. § 6303(b.1), and thus fails to support his argument that CYS's request for an abuse finding at the dependency hearing's conclusion violated notice requirements. *See* Pa.R.A.P. 2119(a).

In his second issue, Father argues the juvenile court abused its discretion by relying on inadmissible hearsay in rendering its dependency adjudication. Father's Brief at 5-7. Father maintains that the testimony of Ms. Lincoln and Dr. Messam, which related Child's disclosures that Father physically disciplined Child, constituted inadmissible hearsay. *Id.*

Father waived this claim by failing to raise it in the juvenile court. *See* Pa.R.A.P. 302(a). As Father concedes in connection with his fourth issue, trial counsel did not object to the testimony Father now challenges as inadmissible.

> To preserve a claim of error pertaining to the admission of evidence, the party must, on the record, make a timely objection, motion to strike, or motion *in limine* that states the specific ground, unless the ground was apparent from the context. Pa.R.E. 103(a). "Where evidence, incompetent as hearsay, is admitted without objection it may be given its natural probative

effect as if it was in law admissible." ***Commonwealth v. Farquharson***, 467 Pa. 50, 354 A.2d 545, 552 (1976).

***In re Adoption of G.W.***, ___ A.3d ___, 2025 PA Super 152, *42 n.21 (Pa. Super. filed July 21, 2025). Additionally, Father waived this claim by failing to include it in his amended concise statement. ***See*** Pa.R.A.P. 1925(b)(4)(vii). Finally, we also deem the claim waived for Father's failure to develop the argument in his brief, as Father cites no applicable authorities relating to hearsay.[9] ***See*** Pa.R.A.P. 2119(a).

In his third issue, Father argues the juvenile court erred in finding Child was a victim of abuse under 23 Pa.C.S.A. § 6303(b.1), as Father contends the evidence was insufficient to establish abuse. Father's Brief at 7-10. Father maintains the evidence did not establish that Father exceeded the bounds of legally-permitted corporal punishment. ***Id.*** at 8-10.

We observe that in Father's formulation of his third question presented, he additionally asserts that the juvenile court "failed to consider [Father's]

---

[9] Regarding hearsay, Father cites only 42 Pa.C.S.A. § 5986(a), which applies to "statement[s] made by a child describing acts and attempted acts of indecent contact, sexual intercourse or deviate sexual intercourse performed with or on the child by another…." 42 Pa.C.S.A. § 5986(a). When quoting section 5956(a) in his brief, however, Father uses ellipses to omit the phrase "describing acts and attempted acts of indecent contact, sexual intercourse or deviate sexual intercourse performed with or on the child by another…." Father's Brief at 6. Father thus misleadingly and incorrectly represents that section 5986(a) applies to ***any*** "statement made by a child…." ***Id.*** As section 5986(a) plainly does not apply to any of Child's statements in the instant case, and Father cites no other authorities regarding hearsay, his claim is waived under Rule 2119(a).

constitutionally protected religious beliefs in assessing the reasonableness of the alleged conduct." Father's Brief at iii. However, in his argument, Father does not mention his religious beliefs, and abandons that aspect of his third issue. *See id.* at 7-10. To the extent Father did not intentionally abandon the claim, we deem it waived under Rule 2119(a) for lack of development and citation to authority. The claim is also waived under Rule 302(a), as Father did not advance any claim regarding his religious beliefs before the juvenile court, but raised it for the first time in his concise statements. *See* Amended Concise Statement, 4/25/25, ¶ 3; *see also* Pro Se Concise Statement, 2/18/25, ¶ 39 ("Those who spare the rod hate their children, but those who love them are diligent to discipline them." (quoting Proverbs 13:24)).

The remaining aspect of Father's argument on his third issue is wholly premised on this Court "[a]ssuming [C]hild's statements were inadmissible…." Father's Brief at 9. Father argues that, after setting aside the purported hearsay testimony, the remaining evidence was insufficient to support the abuse finding. *Id.* at 9-10. However, as set forth above in connection with the second issue, Father waived his hearsay claim, and hearsay admitted without objection "may be given its natural probative effect…." *Farquharson*, 354 A.2d at 552. Finally, while Father's amended concise statement identified the religious-beliefs aspect of his third issue, it did not identify the broader insufficient-evidence aspect he now asserts. Accordingly, the issue is waived. *See* Pa.R.A.P. 1925(b)(4)(vii).

In his fourth and final issue, Father argues trial counsel rendered ineffective assistance by failing to object to inadmissible hearsay testimony, and failing "to object to CYS's last-minute request for a finding of abuse…." Father's Brief at 10-11. Father asserts inadmissible hearsay "ultimately formed the basis for the [dependency] adjudication and finding of abuse." *Id.* at 11. Father also maintains that trial counsel's failure to object to CYS's request for a finding of abuse at the hearing's conclusion "prevented [Father] from presenting evidence on his own behalf and presenting a defense to the request for a finding of abuse."[10] *Id.* Father asserts that he "has demonstrated a high degree of likelihood that[,] but for the unprofessional error on the part of [trial] counsel, [C]hild would not have been [adjudicated] dependent" and "there would not have been a finding of abuse." *Id.*

CYS counters that trial counsel "vigorously" represented Father at the dependency hearing, and argues the record shows trial counsel "was simply following a strategy" with respect to the alleged hearsay testimony. CYS Brief

_____

[10] Father does not identify any evidence he was prevented from presenting. *See* Father's Brief at 10-11. We observe that, though CYS failed to check a box on the form dependency petition indicating an allegation of child abuse under 23 Pa.C.S.A. § 6303, *see* n.1 *supra*, the petition's factual averments specifically alleged abuse. *See* Dependency Petition, 11/19/24, at 6 (alleging "Father physically abused [Child] with an electrical cord."). Moreover, in connection with his hearsay argument, Father acknowledges that Child was present at the hearing. *Id.* at 7. Assuming *arguendo* that trial counsel could have prevailed on hearsay objections to the testimony of Ms. Lincoln and Dr. Messam regarding Child's statements, CYS could simply have called Child to testify. Father does not argue that Child would have contradicted the testimony of Ms. Lincoln and Dr. Messam.

at 25. CYS maintains no error of trial counsel caused the dependency adjudication or abuse finding, and asserts Father has failed to show the result would have been different had counsel acted differently. *Id.* CYS further argues Father waived this issue by failing to include it in his concise statement. *Id.* at 10.

As this Court has observed,

[i]t is well-settled that there exists in parents a right to counsel in dependency cases, which right derives from the Juvenile Act[, 42 Pa.C.S.A. §] 6337. *In re S.M.*, 418 Pa. Super. 359, 614 A.2d 312 (1992)[;] *In Matter of J.P.*, 393 Pa. Super. 1, 573 A.2d 1057 (1990) (*en banc*) (citing *Interest of DelSignore*, 249 Pa. Super. 149, 375 A.2d 803 (1977))[.] This right to counsel has also been expressed as a right to effective assistance of counsel, such that the denial of effective assistance is tantamount to having proceeded with no counsel at all. *In re S.M.*, *supra*.

*In re N.B.*, 817 A.2d 530, 535 (Pa. Super. 2003) (footnote omitted).

In the context of a dependency case, in the exercise of its broad scope of review, an allegation of ineffectiveness of counsel on appeal would result in a review by this Court of the total record with a determination to be made whether on the whole, the parties received a fair hearing, the proof supports the decree by the standard of clear and convincing evidence, and upon review of counsel's alleged ineffectiveness, any failure of his stewardship was the cause of a finding of dependency. Mere assertion of ineffectiveness of counsel is not the basis of a remand or rehearing, and despite a finding of ineffectiveness on one or more aspects of the case, if the result would unlikely have been different regardless of a more perfect stewardship, the decree must stand.

*In Matter of J.P.*, 573 A.2d at 1066.

Under the criminal standard, in order to prevail on an ineffectiveness of counsel challenge, the appellant must show that []he had a claim of arguable merit, that counsel handled the claim unprofessionally, and that counsel's action caused h[im] prejudice. In the context of a dependency proceeding, before

- 15 -

counsel can be deemed ineffective, under the above stated criminal standard[,] the appellant must make a strong showing of ineffectiveness of counsel. Under this heightened test the parent must come forward with evidence that indicates to a high degree of likelihood that but for an unprofessional error on the part of counsel, the child would not have been found dependent.

*In re K.D.*, 871 A.2d 823, 828 (Pa. Super. 2005) (quoting *In re S.M.*, 614 A2d at 315-16).

This Court has not expressly decided when a parent may first command review of a claim that []he has been denied h[is] right to counsel in a dependency proceeding. Our precedent does make clear, however, that a parent's claim that []he was essentially denied counsel because of counsel's ineffectiveness at a dependency hearing is capable of vindication in an appeal filed after the entry of a dependency and dispositional order. *In re S.M.*, [614 A.2d] at 316; *In Matter of J.P.*, [573 A.2d] at 1057.

*In re N.B.*, 817 A.2d at 535 (footnotes omitted); *see also In Matter of J.P.*, 573 A.2d at 1066 ("Procedurally, since a claim of ineffectiveness could only present itself on appeal, and as this would be the first opportunity new counsel would have to make such an allegation, the appellate procedure must lend itself to the process.").

Instantly, we observe that trial counsel filed Father's amended concise statement on April 25, 2025. The statement identified no issues relating to counsel's ineffectiveness.[11] *See Int. of I.M.S.*, 267 A.3d 1262, 1266 (Pa. Super. 2021) (citing *Commonwealth v. Spotz*, 18 A.3d 244, 329 n.52 (Pa. 2011) ("[C]ounsel cannot argue his or her own ineffectiveness.")). On May

---

[11] Father's *pro se* concise statement identified no issues relating to trial counsel's representation. *See generally Pro Se* Concise Statement, 2/18/25.

23, 2025, the juvenile court granted trial counsel leave to withdraw, and appointed appellate counsel to represent Father. On July 7, 2025, appellate counsel filed a brief on Father's behalf, raising the ineffectiveness claim for the first time. In his brief, Father does not address the procedural posture of his ineffectiveness issue, and does not argue that it is properly before us despite its non-inclusion in any Rule 1925 statement. CYS contends the issue is waived under Rule 1925.

We decline to reach the question of whether the issue is waived under Rule 1925, as we deem it waived under Rule 2119(a). Father argues trial counsel rendered ineffective assistance in connection with two underlying claims—the same two claims forming the basis of Father's first and second appellate issues, discussed *supra*—*i.e.*, (1) that certain testimony should have been excluded as inadmissible hearsay, and (2) CYS's request for an abuse finding at the hearing's conclusion violated procedural notice requirements.[12] Father's Brief at 10-11. In Father's argument on the ineffectiveness issue, his brief does not cite authorities relating to these underlying claims, but apparently relies on his discussion of those claims in

_____

[12] We further note that, while Father's argument on his fourth issue argues ineffectiveness based on both of these underlying claims, his formulation of the question presented identifies only the hearsay claim, not the notice claim. **See** Father's Brief at iii. Accordingly, the notice aspect of Father's ineffectiveness claim is additionally waived under Pa.R.A.P. 2116(a). **See** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

his arguments on his first and second issues. As set forth above, however, Father failed to develop his first and second issues with citation to pertinent authorities, and those issues are waived under, *inter alia*, Rule 2119(a). Because Father "must show that []he had a claim of arguable merit" to prevail on his ineffectiveness challenge, **In re S.M.**, 614 A2d at 315, his failure to develop his underlying claims leaves his ineffectiveness claim similarly undeveloped. "This Court will not act as counsel and will not develop arguments on behalf of an appellant." **Int. of R.H.**, 320 A.3d 706, 716 (Pa. Super. 2024) (citation omitted). Accordingly, we deem Father's fourth issue waived under Rule 2119(a).

Order affirmed.

P.J.E. Ford Elliott joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/24/2025